### PATRICK GRAY'S CASE.

### Kennebec. Opinion July 9, 1923.

*An injury, to be compensable under the Workmen's Compensation Act, must arise both "out of" and "in the course of" one's employment. Both elements must be present. An injury to oneself caused by striking another employee, having been aggravated by insulting language and threatening gestures by such second employee, but being the aggressor at the time the blow was delivered, following a cessation of the first altercation, is an injury with no causative connection with the employment, not arising "out of" even if it arose "in the course of" the employment, hence not compensable.*

The decree in this case, originating under the statute providing for compensating workmen for accidental injuries, is reversed; the reason being the absence of causative connection between the petitioner's employment and the resulting physical harm; the injury was not a natural incident of his work.

On appeal. The petitioner, while in the employment of the Cushnoc Paper Company at Augusta, as a backtender on a paper machine, had an altercation with another employee. The other employee displayed insolence toward and made menacing gestures at the petitioner and then retreated to a platform. The petitioner followed after and struck him, breaking his own thumb in consequence, for which injury he was awarded compensation under the workman's act. The appeal is sustained.

No counsel appeared for the petitioner.

*Andrews, Nelson & Gardiner*, for respondent.

SITTING: CORNISH, C. J., HANSON, DUNN, MORRILL, DEASY, JJ.

DUNN, J. Obviously, under the statute providing for compensating workmen for accidental injuries arising both out of and in the course of their employments, an injury which occurs while but one of these conjunctive elements is present, is not to be recompensed.

The paper was breaking, to use expressions of the business, on the machine that the claimant was backtending, and he was trying to remedy that trouble in the absence from the mill of a coemployee called the third hand.

When the latter returned the backtender admonished him to give notice of any future leaving. Whether the backtender, who was known also as the second hand, had the right to so lay injunction against the third hand became the subject-matter of an altercation between the two. Soon, as the dispute continued, the third hand attempted to hector the second hand by saying, apparently with more insolence than courage, that he was unafraid of him. And the other retorted that the vexing one had no need to be in fear. "Then," testified the backtender, referring to the second hand, in words conspicuous of meaning, "he put his dukes up." The backtender struck at the assailer. The blow fell short. But the second hand winced before it, and retreated to and clambered up on a platform. From this supposed vantage ground he twitted the backtender of his lineage, scoffed at his paternity and reproached him for imputed personal habits. Over went the backtender to the platform. How far away and how high the platform was is not shown. But, once on it, the backtender smote the asperser on the jaw, breaking his own thumb as a result.

Compensation was decreed. The decree must be reversed. The reason being that the injury was sustained outside the scope or sphere of the disabled workman's employment.

Whatever, if the third hand had not retired from the first encounter, the case in legal aspect might have been, that retirement left no causative connection between the backtender's employment and the resultant physical harm. Albeit the employment may have afforded opportunity for that which jeers and gibes provoked, yet it was not the origin or cause of the suffered hurt; the injury was not a natural incident of the employee's work.

The phraseology, "arising out of employment," at first blush so simple as to be almost self-defining, has been the occasioner of rather numerous decisions. "The accident must have . . . . been due," says Mr. Justice DEASY in wonted clarity of diction, "to a risk to which the (employee) was exposed . . . . because employed by the defendant." *Mailman's Case*, 118 Maine, 172. "The great weight of authority," writes Mr. Justice PHILBROOK, after discriminating research, "sustains the view that these words "arising out of" mean that there must be some causal relation between the conditions under which the employee worked and the injury which he received." *Westman's Case*, 118 Maine, 133. An injury, upon reference to Massachusetts, arises out of the employment when, after the event, it must appear to have had its origin in a risk connected with the employment, and to have swept along from that source as a rational consequence. *McNicol's Case*, 215 Mass., 497. Injuries arising from employment are such as are made likely by the character of the business or by the method under which it is carried on. *Jacquemin v. Turner, etc., Mfg. Co.*, 92 Conn., 382, 103 Atl., 115. An injury is deemed to arise out of employment when there is apparent, on consideration of all the circumstances, the relation of cause and effect between the conditions under which the work is required to be performed and the resulting injury. *Buvia v. Oscar Daniels Co.*, 203 Mich., 73, 168 N. W., 1009, 7 A. L. R., 1301; when it is a direct and natural result of a risk reasonably incident to the employment, *Thomas v. Proctor, etc., Mfg. Co.*, 104 Kan., 432, 179 Pac., 372, 6 A. L. R., 1145; when it is possible to trace the injury to the nature of the employee's work, or to the risks to which the employer's business expose the employee, *Coronado Company v. Pillsbury*, 172 Cal., 682, 158 Pac., 212, L. R. A., 1916-F, 1164; and

when the injury may be seen to have had origin in the nature of the employment, *Baum* v. *Industrial Com.*, 288 Ill., 516, 123 N. E., 625, 6 A. L. R., 1242.

Claimant's injury arose, not out of his employment as a contributing proximate cause, but in broadest view only in the course of that employment. When his antagonist fled, the quarrel ceased. Not content, however, to leave the matter stand, the claimant pursued his vanquished though still insulting foe, and becoming himself the assailant waged action anew.

This was aside from any duty relating to his contract of service as a backtender, either directly or indirectly. It was aside from any risk immediately connected with his work and flowing therefrom down the channel of natural result; apart from any protection of his employer's interests; it was unrelated to his employment even incidentally. It was, in the angle of the existing situation, the claimant's purely personal affair, voluntary and perhaps disciplinary in its inception, certainly painfully disastrous in its ending. Injuries resulting in the course of employment from assaults to gratify feelings of resentment or enmity are not compensable. *Jacquemin* v. *Turner, etc. Mfg. Co.*, supra; *Romerez* v. *Swift & Co.*, (Kan.), 189 Pac., 923.

*Appeal sustained.*
*Decree below reversed.*
*Petition dismissed.*