No. 2544.

Second Circuit.

---

BECTON v. DEAS PAVING COMPANY, INCORPORATED.

---

(March 11, 1926.  Opinion and Decree.)
(April 10, 1926.  Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 154.**

Where an injured employee works in excessive heat which caused an enlargement and dilation of the heart which rendered the heart unable to properly function, it was an "accident" within meaning of the Workmen's Compensation Act defined by Section 38 of Act 20 of 1914.

2. **Louisiana Digest—Master and Servant —Par. 154.**

Where an injured employee suffered from a diseased heart, if there was a causal connection between the labor performed and the collapse of the injured employee, it will be considered an accidental injury within the meaning of the Workmen's Compensation Law, Section 38 of Act 20 of 1914, because the overexertion was the proximate cause of the disability.

3. **Louisiana Digest—Master and Servant —Par. 159.**

An injured employee is entitled under the Workmen's Compensation Act, Section 8, Subsection 1(c), of Act 20 of 1914, to recover the difference between wages at the time of the injury and wages which he is able to earn thereafter; not what he is earning.

4. **Louisiana Digest—Master and Servant —Par. 160 (j).**

The fact that the injured employee was given work as night watchman, although his condition was such that he could not retain the position, will not be considered sufficient to prove what he is able to earn within the meaning of the Workmen's Compensation Act, Section 8, Subsection 1(c) of Act 20 of 1914.

5. **Louisiana Digest—Master and Servant —Par. 159.**

Where an injured employee, who is a day laborer, is totally incapacitated from doing manual labor, he will be granted 65 per cent of the amount that he earned during the period of disability not exceeding four hundred weeks under the Workmen's Compensation Law, Section 8, Subsection 1(b) of Act 20 of 1914, as amended by Act 216 of 1924.

Appeal from the Sixth Judicial District Court of Louisiana, Parish of Ouachita, Hon. Percy Sandel, Judge.

Action by W. E. Becton, an injured employee, against Deas Paving Co., Inc., to recover compensation under the Workmen's Compensation Law, Section 8, Subsection 1(b) of Act 20 of 1914, as amended by Act 216 of 1924. There was judgment for defendant, and plaintiff appealed.

Judgment reversed.

Theus, Grisham and Davis, of Monroe, attorneys for plaintiff, appellant.

McHenry, Montgomery, Lamkin and Lamkin, of Monroe, attorneys for defendant, appellee.

ODOM, J. Plaintiff brought this suit to recover compensation at 65% of his wages during total disability not exceeding 400 weeks under the Workmen's Compensation Act (Act No. 20 of 1914 and amendments).

His demands were rejected by the lower court and he appealed.

## STATEMENT OF THE CASE AND OPINION.

Plaintiff was employed by defendant to work at its asphalt mixing machine in West Monroe, Louisiana, as foreman and engineer at a weekly wage of $22.15. His duties were to fire the boiler and look after the engine. The place where he was working was a very hot one, the heat of the boiler being reflected upon him.

On July 24, 1924, a very hot day, the engine, which seems to have been on top of the boiler, was giving trouble. It stopped a number of times during the day, and in order to start it it was necessary for some one to climb up on the boiler and turn a wheel. The turning of this wheel required a great deal of physical strength and exertion.

Plaintiff had started the engine in that manner a number of times during the day, and on one occasion called to some colored laborers to start it, and it seems they were not successful, whereupon plaintiff again climbed up on the boiler and, with great physical exertion, turned the wheel and started the engine.

When he did this, he says:

"I felt a little keen pain in the side and turned sick in a few seconds, and the assistant foreman passed again—we were awfully busy getting started—and I says, 'You will have to send some one to take my place; I am sick.' He looked and said,

'I reckon you are; you go to the shed.' "

His testimony is that he went to the shed and the foreman called a physician, who carried him to his home. That was on Thursday. He remained in bed until the following Tuesday, when he got up and went back to work under the advice of the company's physician, and worked until August 20, when, he says,

"I had another attack."

In detailing the circumstances of the last attack, he said:

"The glass blowed out of the lubricator and I had to patch it—I didn't have no more glass—and was patching it, and it took thirty or forty minutes, and I fell out again the same way as I did the other time. It was a warm place where I was at."

After this attack, plaintiff went to his home, and soon after arriving there he fell to the floor unconscious. He was treated by a physician, who was sent for at once. As a result of this second attack he remained in bed for several days. He did not return to work, being advised by the physician that he was unable to work and that he was liable to fall dead at any moment. From that time to the date of the trial he was not able to perform any labor requiring physical exertion. He testified that he was not able to walk a block, and two physicians—the only ones who testified—stated unqualifiedly that he is unable to work and that any kind of physical exertion will probably produce death. And they further stated that this disability is permanent, there being no cure for it.

As to his condition and the cause, Dr. Milam, a physician who was employed by the insurance company to look after and treat those who were injured while in the employ of the defendant company, said:

"I would say his condition was caused by his occupation; by the heat, as I understand it from Mr. Riles, the foreman of the plant. Mr. Becton was there and had

charge of the boiler, or cleaning out the boiler, I don't remember, but he was right in the heat there, and it was a very hot day, and along with the heat from the boiler was overcome by heat; kinder heat stroke or sun-stroke—heat stroke from his occupation, I would judge."

And he was asked:

"Q. In your opinion, what caused this second attack?"

And he said:

"A. I would imagine heat from exposure around that boiler was the cause of the second attack. I couldn't say positively. I didn't see him."

And he said, further:

"That could have caused it."

He also testified that he would advise plaintiff to get an easier job, where he would not be subjected to heat.

Dr. J. E. Waldsworth testified that he made a casual examination of plaintiff several months after he was stricken, but that within a week previous to the trial he had made a thorough examination.

He says plaintiff has an "aortic regurgitation," which, he says, means that the blood which goes into the aorta or aortic valves is insufficient; permits the blood to flush back out of the heart.

On being asked the effect of this heart trouble, he said:

"Well, when you have compensation, and I mean by compensation a sufficient enlargement of the heart to compensate for that leakage, why, you ordinarily don't suffer any inconvenience."

He was asked to give his opinion as to plaintiff's condition, and, after detailing the history of the case as it had been given to him, he stated that "aortic regurgitation" comes only slowly, and that, in his opinion, plaintiff had a diseased and impaired heart previous to the time he began to work for defendant, and was asked:

"Would anything cause it to come on all of a sudden or make it worse or aggravate it?"

And he said:

"Aortic regurgitation, the condition that he has there, is more susceptible to acute dilation of the heart than any other of the heart diseases, I think; and any over-exertion would be calculated to produce acute dilation of the heart. The dilation depending on the effect that produces it and the history of the heart muscles, that is, the degree of dilation."

And he was asked if he could say that these two cases of heat stroke or sun-stroke were caused from over-exertion or aggravated or caused the heart trouble to become greater or more serious, and he answered:

"I would say yes. Any over-exercise, any stringent exercise, would be possible to produce a severe experience on his part. In fact, sudden death in aortic regurgitation is more common than any other type of heart disease."

And he further testified that any violent exercise would likely bring on a calamity, and he gave it as his opinion that over-exercise of the plaintiff on the occasion referred to "broke the compensation" and that after compensation is one time broken the danger increases materially after that because the muscle is already impaired; and he said:

"You can never recover completely, and it is more liable to break again than before."

He gave it as his opinion that the combined heat and exercise possibly brought on plaintiff's condition, and that he was capable of considerable exercise previous to the break in compensation, but that

since then it would be dangerous for him to undergo any physical exertion.

He further stated that whenever exercise caused a break in compensation, that aggravated the patient's condition.

His attention was called to the great change which had taken place in plaintiff's condition since the accident of July 24 and August 20, and was asked if this change was brought about by the manual labor and exertion on those occasions, and he said:

"In my opinion, the history coincides with the facts that it did."

Plaintiff's demands are resisted by the defendant on the ground that defendant's condition was not brought about by any accident as contemplated under the workmen's compensation act.

Section 38 of that act defines "accident" to mean

"* * * an unexpected or unforeseen event happening, suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury."

We are of the opinion that plaintiff suffered an accident as contemplated under the law.

He was working in a hot place on a very hot day. He over-exercised himself, which caused an enlargement or dilation of the heart, and compensation was thereby broken. A condition was brought about by the heat and exercise which rendered the heart unable to function properly. This was sudden and happened unexpectedly. The "break in compensation" resulted from an effort put forth by plaintiff while at work in the course of his employment. It resulted from heat and over-exertion. The employment was the proximate contributing cause of the break-down.

The testimony of Dr. Waldsworth shows that plaintiff had a diseased heart, but he says that if he had taken only moderate exercise under ordinary conditions the breakdown would probably have been long delayed but could have occurred as the result of any exercise, such as climbing steps, etc.

But the testimony shows that his condition was not such that death or a breakdown was reasonably to be expected at any time under ordinary circumstances.

We find many decisions holding that a laborer is not entitled to compensation where he suffered and was disabled from heart failure in the course of his employment; but those are cases in which the testimony failed to show that the heart failure or final collapse in case of a diseased heart was brought on by exertion or strain while the employee was at work. But in cases where there was found to be a causal connection between the labor and the collapse the courts have held that there was an accidental injury under the statute.

In all cases it must be determined whether the "real cause of the injury is disease or the hazard of the employment". Conceding, as we must, under the testimony, that plaintiff had a diseased heart, yet it is clear that the injury resulted from the employment as the inducing, proximate cause thereof. The disease from which plaintiff was suffering was, no doubt, progressive, and may have ultimately resulted in disability or death; but the injury resulting in disability is directly traceable to the employment. It was the strain, the over-exertion, which brought on the breakdown.

In the case of Hicks vs. Meridian Lumber Co., 152 La. 975, the court said:

"It is quite immaterial for the purposes of this case whether the alleged strain brought on the aneurism, or merely

hastened the inevitable rupture; for this court would allow compensation in either case."

The court then cites the case of Craft vs. Lumber Co., 151 La. 281, 91 South. 736, and quotes from the case of Hooper vs. Standard Ins. Co., 166 Mo. App. 209 (148 S. W. 116) as follows:

"Where a man is so afflicted that he will die from such affliction within a very short time, yet if, by some accidental means, his death is caused sooner, it will be a death from 'accident', within the meaning of an accident insurance policy."

Behan vs. Honor Co., 143 La. 348, 78 South. 589.

Harden vs. Higgins O. & F. Co., 147 La. 457, 85 South. 202.

Johnson vs. Vernon Parish Lmbr. Co., 151 La. 667, 92 South. 219.

In an exhaustive note in 19 A. L. R. 110, where a great many cases are cited and reviewed, we find the rule thus stated:

"An award of compensation may be made although there was a pre-existing heart disease, if that disease was aggravated and accelerated by an accidental injury which arose out of and in the course of the employment and was the proximate cause of the disability of death."

And again:

"Compensation is only recoverable where there was a direct causal connection between the effort put forward in the employment, and the injury, and the determining question is whether the employment was the proximate contributing cause."

As to what may be termed an "accident" see 7 A. L. R. 1611, and note at page 1614.

Our conclusion is that plaintiff suffered an accident as contemplated under the statute.

As to the amount of recovery:

The testimony shows that plaintiff is not an educated man and is capable of earning wages only through manual labor. He is now totally incapacitated from doing manual labor, the kind of work he was doing when injured. The defendant discharged him because it recognized that fact. The physicians testify that labor of that kind will bring on sudden death. Plaintiff says he cannot walk a block without resting. He therefore cannot earn anything at the kind of work he is capable of doing.

At the time he was injured he was earning $22.50 per week. He is entitled to recover 65% of that amount during the period of disability not exceeding 400 weeks, under clause (b) of paragraph 1 of Section 8 of Act 20 of 1914, as amended by Act 216 of 1924.

At some time subsequent to the accident, defendant gave plaintiff some light work on a raft or barge and gave him wages for a few days. After this suit was filed defendant's foreman sent for plaintiff and put him to work as nightwatchman at a weekly wage of little less than he originally earned, and he was so employed on the date of the trial.

The point is made that inasmuch as plaintiff was earning on the date of the trial practically as much as he formerly earned, he is not now entitled to compensation or at most is entitled to no more than 65% of the difference between what he was earning at the time of the injury and what he was earning at the time of the trial, under clause (c) of paragraph 1 of Section 8 of the act.

That clause provides that for partial disability the employee is entitled to recover 65% of the difference between wages at the time of injury "and wages which the injured employee is able to earn thereafter"; not what he is earning.

The testimony shows that plaintiff is

not able to earn anything at the kind of labor he is capacitated to perform, that is, manual labor.

After the injury and after the suit was filed, defendant's foreman put plaintiff. to work as nightwatchman, which required no physical exertion. o This may have been done on account of sympathy and interest which the foreman felt for him, seeing that he was out of work and could earn nothing; or it may have been done to de- feat plaintiff's action. This latter view seems plausible in view of the fact that plaintiff remained out of work for four or five months after the accident and was then given work as nightwatchman only after this suit was filed.

We cannot accept this as evidence of what plaintiff is able to earn.

Without ascribing to defendant any ul- terior motive in giving plaintiff employ- ment as nightwatchman under the circum- stances, we conclude that at best it was no more than charity or a gratuity. In all probability if defendant's present fore- man should sever his connection with the business, or if defendant should cease operations, no one else would feel enough interest in or sympathy for the plaintiff to look up an easy place for him.

Hulo vs. City of New Iberia, 153 La. 284, 95 South. 719.

Norwood vs. Lake Bisteneau Oil Co., 145 La. 823, 83 South. 25.

Woodcock vs. Dodge Bros., 17 A. L. R. 203, and note thereto.

We think, however, that defendant is entitled to credit for whatever amount it has paid plaintiff in wages since the date of the accident.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and

reversed, and it is now ordered, adjudged and decreed that plaintiff, W. E. Becton, have judgment against and recover from defendant, Deas Paving Company, Incor- porated, in the sum of fourteen and 40-100 dollars per week (being 65% of his wages) during the period of his disability, not ex- ceeding 400 weeks, as for total disability, beginning August 27, 1924; these payments to bear interest at 5% per annum from the date of their respective maturities. And it is further ordered that defendant have credit on this judgment for the total amount it paid plaintiff for his services rendered subsequent to the date of the accident and to be credited on the first amounts due hereunder.

All costs to be paid by defendant.