JOSEPH GIGUERE *v.* E. B. & A. C. WHITING COMPANY ET AL.

January Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed February 5, 1935.

*J. A. McNamara* for the defendants.

*Harold J. Arthur* for the plaintiff and claimant.

THOMPSON, J.   This is an appeal by the claimant to the county court from the decision of the commissioner of industries denying his claim for compensation for a hernia received by him while working for the defendant, Whiting Company, and which he claims was a ''personal injury by accident arising out of and in the course of his employment'' within the meaning of that expression as used in the Workmen's Compensation Law (P. L. 6480 *et seq.*).   The commissioner found that the claimant's injury arose out of and in the course of his employment.   He dismissed the case on the ground that the injury was not an ''injury by accident'' within the meaning of the statute.

The commissioner certified eight questions to the county court as provided by P. L. 6549.   There was a trial by jury in that court.   It is not necessary to repeat the questions certified. They were submitted to the jury in the form of a special verdict, and all answers were favorable to the claimant.   The jury, by their answers, found, in substance, that the claimant received a hernia which was an injury that arose out of and in the course of his employment; that his injury was caused by the lifting of a tray or rack from the floor; that it was sudden, unexpected and unforeseen; that it was a personal injury by accident; and that the claimant was entitled to compensation, medical and hospital expenses as provided by the Workmen's Compensation Law.   Only two witnesses testified in the trial below, the claimant, and Dr. Lawrence who treated him and operated upon him for his hernia.   Their testimony was not contradicted.

At the close of the claimant's evidence at the trial below, the defendants moved for a directed verdict in their favor on the grounds that, taking the evidence in the light most favorable to the claimant, it appears that there was no accident or anything that could be construed as an accidental injury that preceded the occurrence of the hernia; that without affirmative evidence of something preceding the injury which was out of the usual course of the claimant's employment in the way of external force or something unforeseen or unexpected in the work he was doing there was no evidence on which a jury could find that his injury was received by accident; that the evidence in

the case tends only to prove an effect without any accidental cause. The motion was denied and an exception saved.

■ The plaintiff raises the question that on the face of the motion it is meaningless because, under the circumstances of this case, the court could not have entertained such a motion in favor of either party. While the motion for a directed verdict was in the form of a general motion, it was, in essence, a separate motion to each of the questions submitted to the jury, and the exception saved was equivalent to separate exceptions to the submission of each of the questions to the jury. *Downing* v. *Wimble*, 97 Vt. 390, 392, 123 Atl. 433.

There is no dispute as to the facts. The Whiting Company manufactures fibre brushes. The claimant had worked for the company five years. The last year he worked as a fibre spreader in the combing department. His regular duties consisted of lifting trays of fibre which were stacked at the end of a bench, the top of which was three feet from the floor, onto the bench and spreading the fibre on it for use by another employee. The trays weighed from forty to sixty-five pounds each. On the morning of February 28, 1933, there were two stacks of trays about four feet high at the left end of bench. The claimant was lifting the trays from the second stack over the top of the first stack onto the bench. He had lifted about fifteen trays when he started to lift the bottom tray of the second stack which was on the floor. He was standing with his feet about three feet apart. He lifted the tray about eight inches from the floor when he felt a sharp pain on his left side. He received his hernia at that time. He kept on lifting and placed the tray on the bench. Then he stopped work for two or three minutes because he was faint and his side was paining him. He worked the remainder of the day although the pain continued to increase. He testified that he did not feel the pain coming on before he lifted the tray; that he rubbed his left side and felt a bunch there that had not been there before; that he had never had any pain in that region before; that when he received his hernia he was doing his usual work in the usual and regular way; that there was nothing different in the way in which he did his work on that day from the way in which he did it on previous days; that there was nothing out of the ordinary about his work that day.

The claimant's hernia was a left inguinal hernia, and it was the first hernia he had ever received.

Dr. Lawrence testified that some strain was necessary to cause a hernia. He was asked to explain how an inguinal hernia is brought on, and he replied:

> "The structures in the inguinal region change from muscle to a type of tissue which we call aponeurosis and this—we have three layers, one at right angles and one at a tangent to that. Now if any undue pressure or strain is put on that part these structures or fibres may be pulled out of their normal position so that a crevice may appear in this tissue. If they lie in normal position there is no opening, but if the pressure is applied, it is pulled out so this wall opens up and allows the passage of intestinal contents."

He was asked. "Now would you say the condition you found present with Mr. Giguere's case was a result of a strain, brought on as a result of a strain?" and he replied: "I would say that it was an abnormal condition, out of the ordinary." He also testified that the way a person stood would affect the position of the fibres of the inguinal region.

It can reasonably and fairly be inferred from the testimony of the doctor that the structures in the inguinal region of the claimant's body were in normal condition when the hernia occurred. It was his opinion that the hernia was caused by an abnormal strain of the structures in the inguinal region.

Under the provisions of our Workmen's Compensation Act (Public Laws, Ch. 264, § 6480 *et seq.*), an injury suffered by a workman must have an accidental origin to be compensable, and it must arise out of and in the course of his employment. P. L. 6504 provides that "if a workman receives a personal injury by accident arising out of and in the course of his employment," his employer or the insurance carrier shall pay compensation as provided by the act. In *Brown* v. *Bristol Last Block Co.*, 94 Vt. 123, 108 Atl. 922, it was held that in a proceeding under this provision of the act to recover compensation for an injury, the burden is on the claimant to show, not only

that the injury was an accident, but that the accident arose out of and in the course of the injured workmen's employment.

It is conceded in the case before us that the claimant's injury arose out of and in the course of his employment, but it is denied that his injury is an "injury by accident" within the meaning of that expression as used in the act.

■ Ordinarily, the question whether an injury is an "injury by accident" is a mixed question of fact and law, but where, as here, there is no dispute as to the facts, the question is one of law for the court.

Concisely stated, the essential facts are as follows: The claimant, a man of ordinary health and strength, had for a year been required by his regular duties to lift heavy trays of fibre during his working hours. While lifting a tray in the ordinary course of his work and in the manner in which he had been accustomed to lift the trays, he felt a sharp pain in his left side and found that he had received a hernia. The hernia was caused by a strain of the structures of the inguinal region of his body. The question raised in this Court is: Was the hernia an "injury by accident" within the purview of the Workmen's Compensation Act?

The Workmen's Compensation Acts of most of the states use phraseology to the effect that an injury suffered by a workman must be of an accidental nature or orgin, otherwise it is not covered by the act. The usual expressions in the acts are "injury by accident" and "accidental injuries." In some jurisdictions the act provides for compensation for a personal injury to a workman arising out of and in the course of his employment. In those acts the word "injury," used alone, includes all accidents, but the word "accident" does not include all injuries. The two terms are not synonymous. The decisions in those jurisdictions are of no aid in determining what is an "injury by accident."

There has been a great deal of discussion as to the import of the term "accident" in the phrase "personal injury by accident arising out of" the employment.

■ The British Workmen's Compensation Act of 1897, 60 & 61 Vict. 1897, Ch. 37, and the act of 1906, 6 Edward VII. 1906, Ch. 58, contain provisions which are in substance the same as the provisions of P. L. 6504. Lord MacNaghten, when construing the British Act of 1897 in the leading case of *Fenton* v.

*Thorley & Co.* (1903) A. C. 443, said: "The expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked for mishap or an untoward event which is not expected or designed." In this connection he said: "If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap in ordinary parlance would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight, or trying to move something too heavy for him."

His definition of the word "accident" in the sense in which it is used in the British Workmen's Compensation Act has been adopted generally in jurisdictions in this country where the local act itself does not define the word. Our own act does not define the word "accident," and hitherto we have not been called upon to define it. As it is applicable to our act, we adopt the definition given by Lord MacNaghten.

When a workman is injured in a wreck, collision, explosion, or by other fortuitous mishaps causing bodily injury, there is no difficulty in saying that the injury was an "injury by accident." More often, in such cases, the difficulty is in determining whether the accident arose out of and in the course of the injured workman's employment. But when a workman suffered an internal injury in his ordinary work which was itself sudden, unusual, and unexpected, the courts have encountered considerable difficulty in determining whether such an injury was an "injury by accident" in the sense of the statute, and there has been some subtle reasoning and fine distinctions drawn when construing provisions similar to those contained in P. L. 6504.

Our original Compensation Act was enacted in 1915. It had as its basis the uniform act recommended by the board of commissioners for the promotion of uniform legislation, and this in turn was modeled after the earlier British Workmen's Compensation Act. *Bosquet* v. *Howe Scale Co.*, 96 Vt. 364, 368, 120 Atl. 171.

█ It is a settled doctrine of interpretation that, when a statute is adopted in this State from another state or country, if it has received a judicial interpretation there prior to its enactment here, it is to be taken that the language of our statute is used in the sense given to it by such prior adjudication, unless some other sense is indicated by attendant provisions of the

statute. *Adams* v. *Field*, 21 Vt. 256, 266; *Warner* v. *Warner's Estate*, 37 Vt. 356, 360; *Bosquet* v. *Howe Scale Co., supra,* page 371 of 96 Vt., 120 Atl. 171; *In re Martin's Estate,* 96 Vt. 455, 457, 120 Atl. 862. We therefore consider some of the English cases decided before our compensatian law was enacted in which the phrase "personal injury by accident" in the British Workmen's Compensation Act has been construed.

The leading case, *Fenton* v. *Thorley & Co.,* to which we have referred, was decided in 1903. It was an appeal by the plaintiff from the Court of Appeal to the House of Lords. A part of the regular work of the plaintiff, an employee of the defendant, was to move a lever that turned a wheel for the purpose of raising the lid of a vessel and removing the contents. In one operation the wheel would not turn. The plaintiff, with the assistance of another workman, attempted to move the wheel. Suddenly the plaintiff felt something which he described as "a tear in his side," and it was found that he was ruptured. There was no evidence of any slip, wrench, or sudden jerk. The injury occurred while he was engaged in his ordinary work, and in doing or trying to do the very thing he attempted to accomplish.

The plaintiff was denied compensation in the Court of Appeal on the ground that the word "accident," as used in the Act of 1897, involved the idea of something fortuitous and unexpected, and that, as so defined, the element of accident was entirely wanting in the injury. It was held unanimously in the House of Lords that the plaintiff's injury was an "injury by accident" within the meaning of that expression as used in the act, and that he was entitled to compensation. The appeal was allowed: Lord MacNaghten said:

> "It does seem to me extraordinary that anybody should suppose that when the advantage of insurance against accident at their employers' expense was being conferred on workmen, Parliament could have intended to exclude from the benefit of the Act some injuries ordinarily described as 'accidents' which beyond all others merit favorable consideration in the interest of workmen and employers alike. A man injures himself by doing some stupid thing, and it is called an accident, and he gets the benefit of the insur-

ance. It may even be his own fault, and yet compensation is not to be disallowed unless the injury is attributable to 'serious and wilful misconduct' on his part. A man injures himself suddenly and unexpectedly by throwing all his might and all his strength and all his energy into his work by doing his very best and utmost for his employer, not sparing himself or taking thought of what may come upon him, and then he is told that his case is outside the Act because he exerted himself deliberately, and there was an entire lack of the fortuitous element! I cannot think that that is right.''

The Lords referred to the case of *Stewart* v. *Wilson and Clyde Coal Company, Limited*, 5 F. 120, decided in the Court of Session in Scotland in 1902. In that case the appellant, a miner. strained his back in replacing a derailed coal hutch. What he did in replacing the hutch was done deliberately and in the ordinary course of his employment. It was held that his injury was an ''injury by accident'' entitling him to compensation.

Lord M'Laren said that it was impossible to limit the scope of the statute. He considered that ''if a workman in the reasonable performance of his duties sustains a physiological injury as the result of the work he was engaged in, it was accidental injury in the sense of the statute.'' Lord Kinnear said that the injury was not intentional and that it was unforeseen. ''If,'' he said, ''such an occurrence as this cannot be described as an accident, I do not know how otherwise to describe it.''

*Clover, Clayton & Co., Limited* v. *Hughes* (1910) A. C. 242, was an appeal from the Court of Appeal to the House of Lords. A workman suffering from a serious aneurism was employed in tightening a nut with a spanner when he suddenly fell down dead from a rupture of the aneurism. The county court judge found upon conflicting evidence that death was caused by a strain arising out of the ordinary work of the deceased operating upon a condition of body which was such as to render the strain fatal. He held that there was an accident within the meaning of the act, and awarded compensation to the widow of the deceased. This decision was affirmed by the Court of Appeal. A majority of the Lords held that there was evidence to support

the finding, and that it was a case of personal injury by accident arising out of and in the course of the employment. The decision of the Court of Appeal was affirmed and the appeal was dismissed.

Lord Lorenburn, who delivered the principal opinion, said: "The first question here is whether or not the learned judge was entitled to regard the rupture as an 'accident' within the meaning of the Act. In my opinion he was so entitled. Certainly it was an 'untoward event.' It was not designed. It was unexpected in what seems to me the relevant sense, namely, that a sensible man who knew the nature of the work would not have expected it. * * * No doubt the ordinary accident is associated with something external; the bursting of a boiler, or an explosion in a mine for example. But it may be merely from the man's own miscalculation, such as tripping or falling. * * * I think it may also be something going wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel. If that occurred when he was lifting a weight it would be properly described as an accident. So, I think, rupturing an aneurism when tightening a nut with a spanner may be regarded as an accident. It cannot be disputed that the fatal injury was in this case due to this accident, the rupture of the aneurism under the strain. * * * I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. It is found by the county judge that the strain in fact caused the rupture, meaning, no doubt, that if it had not been for the strain the rupture would not have occurred when it did. If the degree of exertion beyond what is usual had to be considered in these cases, there must be some standard of exertion varying in every trade. Nor do I think we should attach any importance to the fact that this man's health was as described. If the state of his health had to be considered there must be some standard of health, varying, I suppose, with men of different ages. An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health."

Lord MacNaghten said that the argument of the appellant that if a man meets with a mishap in doing the very thing he means to do, the occurrence cannot be called an accident, was advanced and rejected in the case of *Fenton* v. *Thorley*; that he

had no doubt that in the case before them there was an accident in the proper sense of the word.

Lord Collins agreed with the Court of Appeal that the case was concluded by the authority of *Fenton* v. *Thorley;* that the argument for the appellant was substantially that which had prevailed in the Court of Appeal in a series of cases which were overruled by that decision.

The decisions in this country, under similar statutory provisions are in the main in harmony with the rule laid down in the English cases to which we have called attention.

It is said in some of the cases that it is no less an accident when a man suddenly breaks down than when there is a mishap to the machine he is operating.

In *Gilliland* v. *Ash Grove Lime & Cement Co.*, 104 Kan. 771, 180 Pac. 793, 796, where a workman suffered a pulmonary hemorrhage while breaking rock and loading cars, the court said:

> "The evidence warranted a finding that the physical structure of the man gave way under the stress of his usual labor. * * * The term accident applies to what happened to him, as clearly as it would apply to what happened to the car had it broken down under the assumed circumstances."

In *Patrick* v. *J. B. Ham Co.*, 119 Me. 510, 111 Atl. 912, 13 A. L. R. 427, where a workman suffered a cerebral hemorrhage while lifting bags of grain in his usual work and in the usual way, it was held that his injury was an injury by accident within the meaning of the statute.

In Brown's Case (*Brown* v. *Otto Nelson Co.*), 123 Me. 424, 123 Atl. 421, 422, 60 A. L. R. 1293, a workman suffered an acute dilation of the heart while shoveling snow in his usual work and in the usual way. The court, when holding that his injury was an injury by accident, said:

> "If a laborer performing his usual task, in his wonted way, by reason of strain, breaks his wrist, nobody would question the accidental nature of the injury. If instead of the wrist it is an artery that breaks, the occurrence is just as clearly an accident. * * * And if the strain, instead of causing

162

the rupture of a subordinate blood vessel, produces a sudden dilation of the heart itself, the occurrence is none the less accidental.''

In *Zappala* v. *Industrial Commission*, 82 Wash. 316, 144 Pac. 54, 55 L. R. A. 1916A, 295, the court said:

"The sustaining of an injury while using extreme muscular effort in pushing a heavily-loaded truck is as much within the meaning of a fortuitous event as though the injury were the result of a fall or the breaking of the truck. To hold with the Commission that if a machine breaks, any resulting injury to a workman is within the act, but if the man breaks, any resulting injury is not within the act, is too refined to come within the policy of the act as announced by the Legislature in its adoption and the language of the court in its interpretation. The machine and the man are within the same class as producing causes, and any injury resulting from the sudden giving way of one, while used as a part of any industry within the act, is as much within the contemplation of the act as the other.''

In *Klika* v. *Independent School District*, 161 Minn. 461, 202 N. W. 30, it was held that an inguinal hernia caused by overexertion or strain was an "accidental injury" within the meaning of the act.

In *Zobitz* v. *Oliver Iron Mining Co.*, 167 Minn. 424, 209 N. W. 313, the plaintiff suffered a hernia while lifting a log. He had been performing the same heavy work for two years. The court found that a strain to which he was subject in the course of his work was the immediate or exciting cause of a rupture of the abdominal muscles, and that he was entitled to compensation therefor.

Some of the other cases in which it has been held that a sudden and unexpected internal injury caused by strain, over-exertion, or other mishap resulting in disability or death, suffered by a workman while doing his work in the natural, normal, and regular way and exactly as he intended to do it, was an "injury

by accident" within the meaning of the statute, are: *E. Baggot Co.* v. *Industrial Commission*, 290 Ill. 530, 125 N. E. 254, 7 A. L. R. 1611; *State ex rel. Puhlmann* v. *District Ct.*, 137 Minn. 30, 162 N. W. 678; *Crosby* v. *Thorp, Howley & Co.*, 206 Mich. 250, 172 N. W. 535, 6 A. L. R. 1253; *Southwestern Surety Ins. Co.* v. *Owens* (Tex. Civ. App.), 198 S. W. 662; *Walsh* v. *River Spinning Co.*, 41 R. I. 490, 103 Atl. 1025, 13 A. L. R. 956; *King* v. *Buckeye Cotton Oil Co.*, 155 Tenn. 491, 296 S. W. 3, 53 A. L. R. 1086; *Becton* v. *Deas Paving Co.*, 3 La. App. 683; *Robbins* v. *Original Gas Engine Co.*, 191 Mich. 122, 157 N. W. 437; *Puritan Bed Spring Co.* v. *Wolfe*, 68 Ind. App. 330, 120 N. E. 417; *Guay* v. *Brown Co.*, 83 N. H. 392, 142 Atl. 697, 699, 60 A. L. R. 1284; *Rockford Hotel Co.* v. *Industrial Commission*, 300 Ill. 87, 132 N. E. 759, 19 A. L. R. 80; *Winter* v. *Atkinson-Frizelle Co.*, 88 N. J. Law, 401, 96 Atl. 360; *Graves* v. *Burns, Lane & Richardson*, 10 N. J. Misc. 667, 160 Atl. 399; *Vorhees* v. *Smith Schoonmaker Co.*, 86 N. J. Law, 500, 92 Atl. 280; *Richardson* v. *City of New Haven*, 114 Conn. 389, 158 Atl. 886; *Comer* v. *Standard Oil Co. of N. Y.*, 130 Me. 373, 156 Atl. 516.

The defendants rely upon *Stombaugh* v. *Peerless Wire Fence Co.*, 198 Mich. 445, 164 N. W. 537. In that case, the death of a workman who had chronic heart disease was due to the breaking of an auricle in his heart while lifting heavy rolls of wire weighing from 150 to 160 pounds. The accident board found that the injury was an "injury by accident." The court, when reversing the decision of the accident board, said:

> "The man died while doing the work he agreed to do, in the way he intended to do it. The exercise accounts for his death. * * * There is no evidence of mischance or miscalculation in what was being done, none of anything fortuitous or unexpected in the manner of doing it. * * * Death was was merely hastened by the exertion."

To the same effect is the decision in *Sinkiewz* v. *Lee & Cady*, 254 Mich. 215, 236 N. W. 784, where a workman suffered a ruptured bowel while lifting heavy sacks and cases of sugar from the floor and placing them on a truck.

The Michigan cases support the contention of the defendants but they are not in harmony with the weight of authority. In

13 A. L. R. 980, it is said that the Michigan court has declared that, as the compensation statute is in derogation of the common law, it must be construed strictly.

If the statute should be given a strict construction, it would, as is said in *Fenton* v. *Thorley, supra,* "exclude from the benefit of the Act some injuries ordinarily described as 'accidents' which beyond all others merit favorable consideration in the interest of workmen and employers alike."

■ The great majority of the courts, including this Court (*Brown* v. *Bristol Last Block Co.,* 94 Vt. 123, 128, 108 Atl. 922), have held that the compensation statutes are to be construed liberally to accomplish the humane purpose for which they were passed. Our own act requires such a construction. P. L. 6578 reads: "In construing the provisions of this chapter, the rule of law that statutes in derogation of the common law are to be strictly construed shall not be applied. The provisions of this chapter shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it."

In the New Hampshire case of *Guay* v. *Brown Company, supra,* it is said:

"If the design of the statute were merely to impose a new rule of liability for fault, there would be force in the contention that, where unknown physical weakness of the workman, not known to or reasonably discoverable by the employer, is a contributing cause for the injury, there should be no recovery. But the act has a very different object in view. Compensation is not dependent upon any fault of the employer, but is awarded whenever the fortuitous event overtakes the workman in the course of and out of his employment. Its object is alleviation of misfortune and not compensation for a legal wrong."

■ Construing the expression "accident" in our act in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed, we hold, in harmony with the English decisions and the decisions in this country to which we have referred, that the

hernia suffered by the claimant was an "injury by accident" within the meaning of the act, and that he is entitled to compensation and medical and hospital service as provided by the act.

*The order of the commissioner of industries is reversed, and judgment that the claimant is entitled to compensation and medical and hospital services as provided by the Workmen's Compensation Act. To be certified to the commissioner of industries.*