HERMAN ROTHFARB v. CAMP AWANEE, INC., ET AL.

(71 A2d 569)

Special Term at Rutland, November, 1949.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion filed February 7, 1950.

*Ryan, Smith & Carbine* for the defendants.

*Bove, Billado & Dick* for the plaintiff.

JEFFORDS, J. This is an appeal from an award by the Commissioner of Industrial Relations under the Workmen's Compensation Act. The commissioner found the following facts: The claimant was employed by the defendant employer on July 23, 1948, the date of the accident, as a pot washer and general kitchen helper at Camp Awanee, a summer camp in Hubbardton, Vermont, and one Anton Boose was employed there as second chef. They slept in separate beds in the same room in a bunk house on the premises provided by the employer and were assigned there by the housekeeper at the camp. The claimant and Boose had known each other for some time, and they worked together in the kitchen at Camp Awanee. Some weeks before the accident the claimant had obtained a flit gun and insecticide from the housekeeper and brought it to the bunk house.

Their hours of work were from 6 A. M. to 7 P. M. with some time off in the afternoon. On the evening in question they left work about 7 P. M., went to the bunk house and had a drink of whiskey, walked about a mile to a place off the camp premises where each had three or four bottles of beer, returned to the bunk house about 11 P. M., had another drink of whiskey and Boose proceeded to undress. The claimant took the spray gun and started spraying insecticide about the room to kill the bugs. Boose requested claimant to stop as it irritated him and told claimant "if you don't stop I'll take it away from you." Claimant continued to spray and Boose knocked the sprayer out of claimant's hand. They both started wrestling, standing first and then falling to the floor between the beds. Another employee came into the room from his adjoining room and asked claimant and Boose to stop, which they did, but afterwards harsh words passed between them and claimant told Boose that he, Boose, got the first grip on him. Then claimant took hold of Boose and they began to wrestle again, falling on the floor between the beds. They rolled and threshed

about the floor for a few minutes and during that time claimant's leg struck against the steel leg on the bed and he sustained a compound fracture of the left tibia and a fractured left fibula. There was no willful intention on the part of either claimant or Boose to injure each other. The claimant and Boose were not required to sleep in the bunk house but the contract of employment contemplated that the claimant should sleep there.

The last paragraph in the findings is as follows: "I hold that the claimant received a personal injury by accident arising out of and in the course of his said employment on July 23, 1948". In support of this holding the commissioner set forth certain "Conclusions of Law".

An order was entered in which the insurer and the employer were directed to pay compensation and expenses.

The case is here on the defendants' exceptions which as set forth in their bill of exceptions are to the above quoted ultimate finding on the grounds that it is contrary to law and is not supported by the findings of facts nor by the evidence, and to the order on the same grounds and on the additional ground that it is not supported by the conclusions of law.

The claimant moved to dismiss the defendants' exceptions to the ultimate finding and to the order on the ground that the exceptions fail to point out the particular defects relied upon and therefore present nothing for consideration in this Court.

As no evidentiary exceptions are briefed they are waived. Thus we only need consider whether the exceptions on the other stated grounds are adequate.

 The validity of the order depended on the sufficiency of the findings to support it. A judgment in an action at law must be so supported. The test of the sufficiency of the exceptions is the same in each case. We have repeatedly held that a general exception to a judgment raises the question of the sufficiency of the findings to support the particular judgment rendered. *Duchaine* v. *Zaetz,* 114 Vt 274, 276, 44 A2d 165, and the numerous cases there cited. Such an exception reaches every question involved in the rendition of the judgment and necessary to its validity, but it does not reach back of the findings. *Duchaine* v. *Zaetz, supra.* To the extent, if any, that the holdings in *Kennedy* v. *Robinson,* 104 Vt 374, 379, 160 A 170, relied on by the claimant, conflicts with the above it is to be disregarded.

The exception here to the order is more than a general exception. It points out reasons why it is claimed that the order is not valid, i.e., that it is not supported by the findings nor by the conclusions of law. Nothing more, nor indeed as much, needed to be stated.

The question whether an injury by accident has arisen out of and in the course of the employment is one of law when there is no dispute as to the facts. *Giguere* v. *Whiting,* 107 Vt 151, 156, 177 A 313, 98 ALR 196; Workmen's Compensation, 58 Am Jur § 461. Here there is no such dispute. Consequently the above quoted ultimate finding, being a conclusion of law, is reviewable under the exception to the order. *Schwarz* v. *Avery,* 113 Vt 175, 180, 31 A2d 916; *Greenwood* v. *Lamson,* 106 Vt 37, 42, 168 A 915. Moreover, the exception did point out the claimed defects in the ultimate finding; that it was contrary to law and not supported by the findings of facts. The motion to dismiss the defendants' exceptions is denied.

The claimant's right to compensation, if any, is a right given him by statute. To be compensable an injury must be the result of an accident to a workman, arising out of and in the course of his employment; neither alone is enough. V. S. 47, § 8072.

In dealing with cases coming under this statute we have said that, speaking generally, an injury arises in the course of an employment when it arises within the period of employment, at a place where the employee may reasonably be, and when he is reasonably fulfilling the duties of his employment; and an injury arises out of an employment when it occurs in the course of it and as the proximate result of it. *Brown* v. *Bristol Last Block Co.,* 94 Vt 123, 125, 108 A 922; *Kneeland* v. *Parker,* 100 Vt 92, 96, 135 A 8, 48 ALR 1396; *Bundy* v. *State Highway Dept.,* 102 Vt 84, 86, 146 A 68. When an injury is a natural and necessary incident or consequence of the employment, though not foreseen or expected, it arises out of it. A risk is incidental to the employment when it belongs to it, or is connected with what a workman has to do in fulfilling his contract of service. The Brown and Kneeland cases, supra.

The defendants do not seriously question that the injury arose in the course of the claimant's employment and we will assume, without so deciding, that it did. The question then is whether it arose out of his employment. To obtain an affirmative

answer to this question the claimant has the burden of showing a causal connection between the accident which caused his injury and his employment. *Bundy* v. *State Highway Dept., supra; Greenfield* v. *C. V. Ry.,* 114 Vt 440, 442, 48 A2d 854.

We have no cases with facts similar to the one here. Many cases are cited by both parties from other jurisdictions which each claims to be in point in his or their favor. None of these cases nor many others which we have read are particularly helpful from a factual standpoint.

The claimant cites and quotes from many cases which have applied the so called "Bunk House Rule" in allowing compensation. There is no need to cite and distinguish all of these cases from the one here. It is sufficient to say that nearly all have to do with risks which are ordinarily and reasonably incurred in carrying out the ordinary pursuits and necessities of life provided such are being performed at the time of the accident in the service of the employer. Of these cases the one nearest in point on its facts with the present case is *Kaiser Lumber Co.* v. *Ind. Comm.,* 181 Wis 513, 195 NW 329. There the claimant was one among sixty employees who were required to sleep in a bunk house. While asleep he was attacked by another employee who had become insane. It was held that the accident arose out of the employment as danger in such sleeping quarters was greater than to the public at large whether by an accident from fire or running amuck, or other cause. In the present case there is no overcrowding in sleeping quarters to provide the additional risk found to exist in the Kaiser case, as from findings it appears that the claimant and Boose occupied one room while the adjoining room was occupied by two other employees. The basis for the holding in the Kaiser case seems to be akin to that in *Myott* v. *Vt. Plywood,* 110 Vt 131, 2 A2d 204. The case of *Miller* v. *Reich Co.,* 132 Neb 338, 271 NW 853 is the only other case cited in support of the Bunk House Rule which involves an assault. In that case the claimant, a ranch hand, had complained about the food. He was assaulted during a meal by the ranch foreman. The opinion in the case is short. Recovery was allowed on the ground that the claimant was required to eat. That his board was a part of his wages so that eating was a service growing out of and incidental to his employment. This case, as will be seen later, is of no help to the present claimant.

The claimant relies upon several cases involving assault by a

fellow employee. Those in this category upon which he lays most stress are *Hartford Acc. & Ind. Co.* v. *Cardillo,* 72 App DC 52, 112 F2d 11; *Newell* v. *Moreau,* 94 NH 439, 55 A2d 476; *Dillon's Case,* 324 Mass 102, 85 NE2d 69; and *Stulginski* v. *Waterbury Rolling Mills,* 124 Conn 355, 199 A 653. It is sufficient to say in respect to these cases that they all have to do with assaults that occurred while the employees were engaged in the work they were hired to do and because of some matter connected with the work. The basis for the allowance of compensation was, generally speaking, that work places men under strains and fatigue creating frictions which may explode and consequently an assault may properly be said to have been caused by the work or by the working environment. In the present case the findings show that the assault did not come about from the work which the claimant and Boose were hired to do nor can it reasonably be inferred from them that it was caused from any friction resulting from the stress and strain of the work. Indeed it is clear that they had been on friendly relations up to the time of the use of the flit gun by the claimant.

In distinguishing the cases just above cited it should be understood that they do not hold it is necessary in order for an employee to receive compensation for an injury resulting from an assault by a fellow employee that the assault must be connected with the work itself or that there must be a showing of ill will between them, springing from their work, prior to the assault.

We come then to the ground, if any, upon which the award should be sustained. This ground, in substance, as set forth by the claimant, is that when he was using the flit gun he was performing a service growing out of and incidental to his employment, as his employer, as well as himself, was being benefitted thereby. In considering this question we will assume that his status is the same as though he had been required to sleep in the room he occupied.

An injury suffered by an employee while performing an act for the mutual benefit of himself and his employer is usually compensable as arising out of and in the course of the employment, even though the advantage to the employer is slight. 58 Am Jur 744; 71 CJ 675.

On the other hand, an injury received by an employee while voluntarily engaged in some activity solely for the pleasure,

convenience, or benefit of himself is not ordinarily compensable as arising out of the employment. 58 Am Jur 740; 71 CJ 677.

Although there is no express finding on this point, it is to be reasonably inferred that the employer would receive some benefit from the use of the flit gun, though it might be slight. The claimant says in his brief that the flit gun was given him because it was the contractual duty of the employer to keep the room reasonably fit for occupancy and that he (claimant) was keeping the room so fit not only for his own personal comfort but for the employer as well. We cannot say that this is not so.

■ But it is not enough that the use of the flit gun at its start was for the benefit of the employer as well as for the claimant. The causal connection between such use and the injury must have been kept unbroken by the claimant up to the time of the injury in order for him to recover. If he departed from its use for this joint benefit and was using it for a reason wholly personal at the time of the assault, then the assault was not incidental to his employment as arising from a work condition or environment. *Stulginski* v. *Waterbury Rolling Mills, supra; Gray's Case,* 123 Me 86, 121 A 556; 71 CJ 678. See also 3 N. A. C. C. A. Law Journal p. 90.

It is clear that from the time Boose requested the claimant to stop using the flit gun the continued use was no longer for the benefit of the employer. Boose said "If you don't stop I'll take it away from you". This should have warned the claimant that trouble might result, as it did, by its continued use. Surely friction between him and the other employee would not benefit the employer. If he needed sleep to work effectively so did Boose. If the claimant felt that the use of the flit gun would enable him to get to sleep sooner it is apparent that Boose took the opposite view, as far as he was concerned. The findings do not show either the quantity or the nature of the bugs but apparently Boose preferred their presence to the use of the flit gun so they could not have been very bothersome. In short, the unreasonable use of the flit gun after the request to stop was for a reason or purpose purely personal to the claimant; either for his own convenience or comfort or to annoy Boose.

But apart from what we have already held, it is certain that the injury has no causal connection with the work environment or condition as an incident thereof. The first wrestling match had ended with no injury resulting therefrom. After some harsh words

between them the claimant told Boose that he, Boose, got the first grip on him. The claimant then started the second tussle from which injury did result. The plain inference to be drawn from the findings is that he felt that Boose had come out victor the first time because he had taken an advantage which, if not unfair, at least was the reason for the victory. Another employee had seen the result of the first encounter and the claimant apparently wished to prove to him and to himself that if he had an equal chance with Boose he could show that he was the better man. It is clear that the claimant voluntarily started the second bout for reasons purely personal to himself. When such is the case injuries resulting therefrom are not compensable as the chain of causation between the employment in any of its aspects and the injuries has been broken. *Stulginski* v. *Waterbury Rolling Mills, supra; Gray's Case, supra; Jacquemin* v. *Turner et al*, 92 Conn 382, 103 A 115. It is probably unnecessary to add that it is universally held that injuries are not compensable which result from assaults which are purely personal in their origin.

The claimant reminds us that we have stated repeatedly, and in the late case of *Wilkins* v. *Blanchard-McDonald Lumber Co.*, 115 Vt 89, 92, 52 A2d 781 that the Act is to be construed liberally to accomplish the humane purpose for which it was passed. This is the rule applied and to be applied by this Court. But a liberal construction does not mean an unreasonable or unwarranted construction which we believe would be the result if we held here for the claimant.

Each case must be determined on its individual facts. *Kneeland* v. *Parker*, 100 Vt 92, 97, 135 A 8, 48 ALR 1396. If we should decide the present one other than as we do, we would, in our opinion, go beyond any of the cases which have come to our attention and allow compensation for an injury not intended to be compensated for under the Act.

*Judgment that the order of the Commissioner of Industrial Relations awarding compensation to the claimant should be, and the same hereby is, annulled, set aside and held for naught. Let the defendants recover their costs in this Court. Let the result be certified to the Commissioner of Industrial Relations.*

CLEARY, J. (dissenting.) The majority has arrived at a result to which, in good conscience, I cannot subscribe. The prox-

imate cause of the assault by Boose was claimant's use of the flit gun, and, even under the tort theory of causation, liability must follow unless the injury resulted from some efficient intervening cause. Such an efficient intervening cause, in order to stand as the responsible cause of the ultimate result, must be a new and independent force or agency breaking the chain of causal connection between the original wrong and that result. *Beatty* v. *Dunn,* 103 Vt 340, 343, 154 A 770; *Meyette* v. *Can. Pacific Ry. Co.,* 110 Vt 345, 353, 6 A2d 33. In claimant's case no new and independent cause intervened. The physical contact temporarily ceased but the assault continued and resulted in the injury.

I would go farther. The phrase "out of his employment" expresses a factor of source or contribution rather than cause in the sense of being proximate or direct. The rule that the employment must be the proximate cause of the accident should be abandoned. A causal connection between the injury and the employment is sufficient, a connection substantially contributory though it need not be the sole or proximate cause. The strict tort reasoning of the doctrine of proximate cause is out of place under Workmen's Compensation Acts. *Cudahy Packing Co.* v. *Parramore,* 263 US 418, 44 S·Ct 153, 68 L Ed 366; *Hanson* v. *Robitshek-Schneider Co.,* 209 Minn 596, 297 NW 19.

It is significant that our Workmen's Compensation Act makes no mention of proximate cause. Care should be exercised lest long judicial habit in tort cases allow judicial thought in compensation cases to be too much influenced by a discarded or modified factor of decision. If the legislature had intended proximate cause to be the determining factor it would have said so. We have no right to judicially insert it.

I cannot follow the argument that the continued use of the flit gun was unreasonable and no longer for the benefit of the employer. The opinion reads something into the facts found by the commissioner which is not there. The majority also finds that "The claimant voluntarily started the second bout for reasons purely personal to himself." To my mind a fairer interpretation of the facts found by the Commissioner would be that there was but one match, halted temporarily by the appearance of a third person. In its treatment of the findings the majority draws inferences adverse to the award rather than in support of it. It disregards our rule, last stated in *Williams* v. *Blanchard-McDonald Lumber*

*Co.,* 115 Vt 89, 90, 52 A2d 781, 782 : "Since the award of the Commissioner is the equivalent of a judgment of a trial court we must construe doubtful findings to support it, if this may reasonably be done."

In addition to the quotation by the majority from *Wilkins* v. *Blanchard-McDonald Lumber Co., supra,* that "The Act is to be construed liberally to accomplish the humane purpose for which it was passed" this Court spoke as follows in *Brown* v. *Bristol Last Block Co.,* 94 Vt 123, 128, 108 A 922, 924 and *Giguere* v. *Whiting Co.,* 107 Vt 151, 164, 177 A 313, 98 ALR 196; "The act should have a liberal and reasonable construction. It is framed on broad principles for the protection of the workman. Relief under it is not based on the neglect of the employer or affected by acts of negligence on the part of the employee. It rests on the economic and humanitarian principle of compensation to the employee, for earning capacity destroyed by an accident in the course of, or connected with, his work."

The defendants' brief insists that the claimant became the aggressor and so is not entitled to recover. The opinion does not mention it. Both sides briefed and argued the question. Therefore, it should be decided. We have no decision in point but I would adopt the law laid down by recent decisions in two of our neighboring states which hold that aggression by the claimant does not prevent recovery. *Dillons Case,* 324 Mass 102, 85 NE2d 69; *Newell* v. *Moreau,* 94 NH 439, 55 A2d 476.

The majority says that no case cited goes as far as this one would if the claimant recovered. Assuming but not admitting that to be so I know of no requirement that this Court be second, or later, in the orderly development of the law. I would affirm the award of the Commissioner of Industrial Relations.

BLACKMER, J., concurs in this dissent.