CLARA S. SCHWARZ *v.* JOSEPHINE AVERY.

February Term, 1943.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 4, 1943.

176

*Fenton, Wing & Morse* and *Kendall A. Sanderson* for the plaintiff.

*Lawrence & O'Brien* for the defendant.

MOULTON, C. J. This is an action in tort for the alleged conversion of a pearl necklace. The cause was tried below without a jury, and resulted in judgment for the defendant. It is here upon the plaintiff's exceptions.

According to the findings of fact the defendant is the trustee of a fund known as the Avery Trust, which was established on September 12, 1921, by her and her husband, Brainard Avery, both of whom are beneficiaries thereof. The original trustees were Robert K. Wehner and the New York Trust Company. Wehner died in October, 1934, and, on March 17, 1937, the New York Trust Company was succeeded in the trusteeship by Emilie Bender, with whom Brainard Avery acted as joint trustee from April 9, 1937, until June 13, 1938. The defendant succeeded Emilie Bender on November 28, 1939, and has since been the trustee.

On March 1, 1934, the plaintiff borrowed the sum of $22,500 from the Avery Trust, and deposited the necklace, of which she was the owner, with the New York Trust Company, as trustee, as security for the loan. The indebtedness was evidenced by a promissory note, of that date, signed by the plaintiff, which stipulates that the necklace is deposited "as collateral security, for the payment of this and any other liability or liabilities of the un-

dersigned, or of the guarantors hereof, or which may hereafter be contracted or existing, due or to become due, or held, or to be held by said Trust Company, Trustee. . . . . Said Trust Company is hereby authorized and empowered at its option at any time to appropriate and apply to the extinguishment hereof and/or of any other of said obligations or liabilities, whether now existing or hereinafter contracted, any and all moneys, or other property or proceeds thereof, now or hereafter in the hands of said Trust Company on deposit or otherwise for account of, to the credit of, or belonging to the undersigned. . . . . Upon any transfer of this note, said Trust Company may deliver the property held as security, or any part thereof, to the transferee, who shall thereupon become vested with all the powers and rights given to said Trust Company in respect thereof." This note is now held and owned by the defendant, as trustee of the Avery Trust, and there is now due and unpaid thereon the sum of $5870.49, with interest from May 5, 1938.

On January 2, 1937, the plaintiff executed a note for $8500. payable to the law firm of Avery and Whiting, of New York City, of which Brainard Avery was senior partner, in renewal of two other notes previously given. This note was pledged by Avery and Whiting to the American Surety Company to secure an indebtedness of the firm. On June 3, 1937, Avery and Whiting sold, assigned and transferred all their rights, title and interest in the note to the trustees of the Avery Trust and on October 7, 1939, the American Surety Company endorsed and delivered the note to Emilie Bender, as trustee of the Avery Trust. The plaintiff knew of the pledging of the note and consented to it. She also knew, on October 24, 1939, when she signed another note later mentioned, for $1135.52, that the trust claimed the note as being owed to it. At the time of the trial $7900. with interest from January 29, 1938, was due thereon. We will hereafter refer to this note as the American Surety note.

The plaintiff was indebted to the firm of Avery and Whiting, for professional services, in the sum of $4,000, and this debt was, with her consent, assigned to the Avery Trust, on June 11, 1937. There is now due and unpaid on this account, $2679.89, principal, with accrued interest from June 9, 1937, to January 1, 1939,

amounting to $375.77, and also interest on the present principal from January 1, 1939.

On October 24, 1939, the plaintiff executed to the defendant, as trustee of the Avery Trust, a note for $1135.52, which was given in payment of certain previous notes, and other items of indebtedness, which is due and unpaid. This note pledged the pearl necklace to secure its payment, and the payment of any other liability or liabilities of the plaintiff "which may hereafter be contracted or existing or due or to become due to, or held or to be held by, said trustee."

In 1931 the Irving Trust Company, of New York City, executor of the will of Hermann Sielcken, the plaintiff's former husband, deposited certain securities with the Chase National Bank of New York, under an agreement by which the income should be paid to the plaintiff. On March 4, 1937, the plaintiff assigned this income to the Avery Trust to apply upon her indebtedness. On May 13, 1938, an injunction was issued by the Surrogates Court for the County and State of New York, whereby the Irving Trust Company, as executor of the estate of Hermann Sielcken, its agents, its assignees, officers, attorneys, employees and all persons or corporations acting under their direction or in their behalf were restrained and enjoined from paying out, transferring, assigning or distributing any of the assets of the estate, or releasing any claims, rights or interest that it might have as executor, except as to the payment of reasonable administration expense and court costs; and the plaintiff, her agents, attorneys, employees and all persons or corporations acting under her direction, and on her behalf, were enjoined from withdrawing, receiving, assigning or transferring any moneys or property of the estate or of the plaintiff, in the custody or possession of, or on deposit in, the Chase National Bank, except as to payment of reasonable administration expense and court costs. Neither the Chase National Bank nor the trustees of the Avery Trust were parties to the proceeding in which this injunction was issued, or were served with the injunction. Thereafter between June 6, 1938, to May 5, 1939, the Chase National Bank continued to make remittances from the income of the securities to the trustees of the Avery Trust, in various sums, amounting in all to $12,657.85. On or about June 12, 1938, Brain-

ard Avery, then one of the trustees, was informed of the injunction by Alex Sielcken, the son and attorney in fact of the plaintiff, and was requested by him to retain the remittances and not to communicate with the officers of the Chase National Bank or of the Irving Trust Company about them. Avery replied that the Trust could not apply the remittance to the plaintiff's indebtedness, and could give no credit for them while the injunction remained in force. The plaintiff knew that no application or credit was given. The Irving Trust Company, as executor of Hermann Sielcken, claims that it relied upon the injunction to protect its rights and preserve the fund intact, including accruing interest, and that the sums remitted by the Chase National Bank have been collected by the plaintiff and her assigns in violation thereof. But, if these sums had been applied upon the plaintiff's indebtedness to the Avery Trust, the balance due, for which the pearl necklace was held as security, was at all times greater than the amount of the remittances. The value of the necklace is found to be $5150.

After making the foregoing findings the trial court concluded that "at the time of the commencement of the action the defendant was rightfully in possession of the pearl necklace as trustee of the Avery Trust and was not guilty of the alleged conversion."

The plaintiff took exceptions to certain of the findings of fact, and in each instance the ground of the exception is that there was no evidence to support the finding, that the finding was against the weight of the evidence, and that the weight of the evidence supported the plaintiff's requests for findings upon the same subject. The exceptions apply only to the findings, and not to the failure to comply with the requests, for an exception to a finding cannot be used as an exception to the failure to find as requested. *Morgan v. Gould,* 96 Vt 275, 280, 119 A 517; *Susena v. Recor,* 103 Vt 447, 449, 156 A 416; *Lariviere v. Laroque,* 104 Vt 192, 195, 157 A 826. Furthermore, the findings have the standing of a verdict expressly approved by the trial court, and cannot be overturned merely because the evidence preponderates against them. *Platt, Adm'x. v. Shields and Conant,* 96 Vt 257, 271, 119 A 520. We do not weigh the evidence since its persuasive effect and the credibility of the witnesses are for the triers of fact to determine. If there is legitimate evidence fairly and reasonably tending to sup-

port the findings, they must stand, and whether there is evidence of this quality and tendency is the only question here. *Harrison v. Harrison,* 110 Vt 254, 257, 4 A2d 348; *Levin* v. *Rouille,* 110 Vt 126, 128, 2 A2d 196; *White River Chair Co.* v. *Conn. River Power Co.,* 105 Vt 24, 35, 162 A 859. The fact that the evidence is conflicting cannot avail the excepting party. *Village of St. Johnsbury* v. *Cenedalla,* 109 Vt 174, 181, 194 A 382.

The challenged findings are those relating to the assignment of the American Surety note and the Avery and Whiting account to the Trust; to the execution of the note for $1135.52, and of a smaller note, previously executed, which was paid by being incorporated in it; and to the conversation between Brainard Avery and the plaintiff's attorney in fact regarding the remittances received from the Chase National Bank after the issuance of the injunction. No difficult problem is presented by these exceptions. It is enough to say that an examination of the transcript and exhibits discloses evidence that, in spite of various contradictions and inconsistencies, reasonably tended to support each of the findings. The exceptions are unavailing.

■ The only remaining exception briefed was taken to the statement in the findings that at the time of the commencement of the action the defendant was rightfully in possession of the necklace, as trustee of the Avery Trust, and was not guilty of a conversion. No doubt this is, as the plaintiff says, a conclusion of law rather than a finding of fact, but, even so, if it is sustained by the facts as previously found, no error can be predicated upon it. *Traveller's Ins. Co.* v. *Gebo,* 106 Vt 155, 164, 170 A 917. The exception is in effect, if not in form, the same as if taken to a judgment based upon facts found, where the question is whether the findings are such as to support the judgment and does not reach back of the findings, or present for review any question of the sufficiency of the evidence upon which they are based. *Morgan* v. *Gould,* 96 Vt 275, 280-1, 119 A 517; *Royal Bank of Canada* v. *Girard,* 100 Vt 117, 119, 135 A 497; *Finn* v. *Holden,* 106 Vt 513, 515, 175 A 231. Indeed, the legal effect of the conclusion would be reviewable under an exception taken to the judgment. *Greenwood* v. *Lamson,* 106 Vt 37, 42, 168 A 915.

The plaintiff's contention is that the American Surety note as-

signed to the trust, and the Avery and Whiting account, also assigned to it, are not secured by the pledge of the pearl necklace, the only obligations thus secured being her original note of March 1, 1934, and her note of October 24, 1939, for $1135.52; that the sums received from the Chase National Bank after the issuance of the injunction should be applied to the payment of the last mentioned notes, and are more than sufficient to cover the balance due upon them; hence, that she is entitled to the possession of the necklace.

 A contract of pledge is to be construed according to the intent of the parties, the subject matter and the course of dealing to which it relates. *Citizens Bank and Trust Co.* v. *Thornton,* 174 F 752, 761; *Union Brewing Co.* v. *Interstate Bank and Trust Co.,* 240 Ill 454, 88 NE 997, 999; *Henwood* v. *Home Indemnity Co.,* 138 Pa Sup 430, 10 A2d 848, 850. If the contract has been prepared by the pledgee, any doubt as to its meaning is to be resolved in favor of the pledgor. *Heffner* v. *First Nat. Bank of Huntington,* 311 Pa 29, 166 A 370, 371, 372, 87 ALR 610; *Fourth National Bank of Nashville* v. *Stahlman,* 132 Tenn 367, 178 SW 942, LRA 1916A 568, 577; *Gillet* v. *Bank of America,* 160 NY 549, 55 NE 292, 294. But where the agreement is clear and unambiguous it is to be enforced according to its terms. *Noyes and Co.* v. *Nichols,* 28 Vt 159, 173; *Flagg, Admr.* v. *Eames,* 40 Vt 16, 22, 94 Am Dec 363.

In *Gillet* v. *Bank of America, supra,* collateral security deposited by the plaintiff's assignors with the defendant "for the payment of this or any other liability or liabilities of the undersigned to said bank, due or to become due, or which may hereafter be contracted or existing," was held to cover only such liabilities as might result from dealings between the plaintiff's assignors and the bank in the ordinary course of banking business and showed no clear intent to cover obligations of the plaintiff's assignors to third persons, purchased by the bank. On the other hand, under contracts of pledge "to secure this and all other liabilities of the undersigned to the said (pledgee) due or to become due," or in equivalent language, notes given by the pledgors to third persons, and indorsed and delivered to the pledgees have been held to be secured. *Hellman Commercial Trust and Savings Bank* v. *Arm-*

182

*strong,* 39 Cal App 483, 179 P 432, 434; *Daniel* v. *First Nat. Bank,* 159 Ill App 576, 578; *Brotherhood of L. E. Securities Corp'n.* v. *Shepherd Lumber Co.,* 51 F2d 153, 154. In *Fourth Nat. Bank of Nashville* v. *Stahlman, supra,* an agreement that certain collateral security should be applicable to the payment "of any other obligations of the undersigned, whether past or future, held by the holder of this obligation" was held to include a liability of the pledgor on a stock purchase contract, held by the pledgee. And in *Oleon* v. *Rosenbloom,* 247 Pa 250, 93 A 473, LRA 1915F 968, Ann Cas 1918B 233, the makers of two negotiable notes deposited security "for the payment of this or any other liabilities of (the makers) to the holder hereof, now due or to become due or that may be hereafter contracted." The pledgee indorsed and delivered the notes to the defendant who was held entitled to apply the security to a debt owing to him by the pledgor, in addition to the amount of the notes. See also *Moors* v. *Washburn,* 147 Mass 344, 346, 17 NE 884.

The contract of pledge, as contained in the plaintiff's note of March 1, 1934, clearly imports that it is of a continuing nature, applicable to future general indebtedness. It is broader and more comprehensive than the agreement in *Gillet* v. *Bank of America, supra.* It provides for security for liabilities contracted or existing with the Trust, and for those "held or to be held" by it. The terms "liability or liabilities" is not restricted to notes but includes other kinds of obligations. The phrase "held or to be held" embraces not only obligations of the plaintiff directly with the Trust, but also such as may become its property through assignment or indorsement by former owners. See *Richardson* v. *Winnisimmet Bank,* 189 Mass 25, 32, 75 NE 97. The "holder of a negotiable instrument" is defined by the Uniform Negotiable Instruments Act (P. L. Chap. 283, sec. 7174) to be "the payee or indorsee of a bill or note, who is in possession of it. . . . ." So, also, one who is in possession of a chose in action as the assignee of the former owner is the holder of it.

Both the American Surety note and the Avery and Whiting account were primary liabilities of the plaintiff, and were, respectively, negotiable and assignable. She had notice of their transfer to the Trust, and in one instance, so far as the findings disclose, expressed no objection, while in the other she gave her consent.

No question of lack of consideration is presented. The contract of pledge as contained in the note of March 1, 1934, is not ambiguous and is to be construed as affording security for the payment of these obligations. It is unnecessary to consider the pledge contained in the note of October 24, 1939, because this agreement covers only the note itself and future liabilities and therefore has no application to liabilities previously incurred. *President etc. of Franklin Bank* v. *Harris, 77* Md 423, 26 A 523.

In view of what has been said, and the finding that, if the sums received from the Chase National Bank should be applied upon the plaintiff's indebtedness there would still be a balance due the Trust (the correctness of which is mathematically demonstrable), the question of the effect of the injunction issued by the New York Surrogate's Court becomes academic. We are not required, in this action, to determine the amount of such balance. If any part of it remains unpaid there is no conversion.

*Judgment affirmed.*

CLARA S. SCHWARZ *v.* JOSEPHINE AVERY.

February Term, 1943.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 4, 1943.

*Fenton, Wing & Morse* and *Kendall A. Sanderson* for the plaintiff.

*Lawrence & O'Brien* for the defendant.