TOWN OF RANDOLPH *v.* FRANCIS KETCHUM ET AL

(94 A2d 410)

November Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed January 6, 1953.

*Bloomer & Bloomer* for the defendants.

*Stanley L. Chamberlin* and *Wilson & Keyser* for the plaintiff.

ADAMS, J.   This is an action to recover the penalty and damages specified in V. S. 47, § 7137 for the removal of Mark Lawrence from Stockbridge to Randolph.   The declaration is in two counts, one for the penalty and the other for the damages.   Trial was by court.   Findings of fact were made and judgment entered thereon for the plaintiff.   The case is here on exceptions of both defendants.

V. S. 47, § 7137, so far as material here, provides:

> "A person who brings a poor person from any town in the state to another town in the state, or aids therein, with intent to charge such town with his support, shall forfeit to such town a sum not exceeding $500.00.   If such town is not liable for the support of such poor person, the person making such removal, or aiding therein, shall also be liable, from time to time, to pay such town such damages as accrue for the support of such poor person, which, as well as the penalty, may be recovered in an action of tort on this statute in the name of the town."

The count in the declaration for damages claims the amount of $461.62 expended by the town for necessary care and support of Lawrence.

The defendants filed ten requests to find.   Their exceptions to the court's failure to so find are as follows: "The defendants severally except to the court's failure to find each and every one of the defendants' ten requests to find, except No. 6, and in each instance on the ground that each request was established by the evi-

dence in the case and there was no evidence to the contrary." Such an exception is inadequate, inappropriate and too general to require attention. *Little* v. *Loud,* 112 Vt 299, 302, 23 A2d 628; *Holton Estate* v. *Ellis,* 114 Vt 471, 484, 49 A2d 210; *Hackel* v. *Burroughs,* 117 Vt 328, 91 A2d 703, 704.

Exceptions to findings number 17, 18, 24, 29, 35 and exceptions number 11 and 12 to finding number 36 are not briefed so they are waived. *Hackel* v. *Burroughs, supra,* and cases cited.

The defendants, in their brief, mention their exception number 3 to finding number 21. The record does not show any exception to this finding; therefore, there is nothing for this court to review and the question is not before us. *Hackel* v. *Burroughs, supra,* and cases cited. The record shows that their exception number 3 was to finding number 24. If we assume that is the one that they intended to mention in their brief, they are no better off. All they say about it, after mentioning two other findings, neither of which seem to support their position, is that finding number 24 was erroneous and prejudicial. This is inadequate briefing and merits no consideration. *Dwinell* v. *Alberghini,* 115 Vt 394, 400, 62 A2d 124.

The defendants excepted to finding number 30 which is as follows: "Undoubtedly Francis Ketchum would not have become involved concerning Mark Lawrence had he not been Overseer, but what he did on August 6, 1949, was not done in his proper capacity as such." The exception is that the finding "is against the evidence and is not substantiated by the evidence, especially on the finding that what he did on August 6th was not done in his proper capacity as Overseer of the Poor."

When a finding is challenged in this manner it must stand if it can be supported on any rational view of the evidence. The credibility of the witnesses and the weight to be given their testimony is not for us, but for the trial court. *Hayden* v. *Lavallee,* 116 Vt 340, 341, 75 A2d 690.

The material findings, unexcepted to or to which, as we have seen, exceptions are not now available which show the facts leading up to the events of August 6, are in substance,—That Lawrence came to Randolph to live in March 1945 and in November 1945 was committed from that town to the Vermont State Hospital. In April 1948 one Layton became Town Manager of Randolph. Shortly thereafter he received notice from the hospital that Lawrence

was to be discharged. Layton was appointed by the Probate Court for the District of Randolph guardian of Lawrence and there came into his hands as such guardian $915.71 which he reported in his inventory to the Probate Court. He brought Lawrence from the hospital and provided room and board for him. Lawrence had formerly lived in Stockbridge and had owned a place there where he had lived for four years or more. He knew a Mr. and Mrs. Butterfield who lived there. He had worked for them earlier in his life and before that they had been neighbors and Mrs. Butterfield had known him for 30 years. He wanted to go back and be with his friends in Stockbridge. It was his old home and he expressed his desire to his guardian to live there. Layton accordingly made arrangements with Mrs. Butterfield to take Lawrence and keep him and agreed to pay her a stipulated sum for so doing. This placement was made on the understandable request of Lawrence and was not made for the purpose nor with the intent of imposing eventual liability for support on the town of Stockbridge. By February 1st, 1949, the funds in the guardian's hands were exhausted and Layton filed his final account with the Probate Court on April 15, 1949, showing that fact, but he was not discharged until April 25, 1950. Mrs. Butterfield, shortly after February 1, 1949, learned from Layton that the funds in his hands were exhausted. Lawrence while at Butterfield's was unable to work and didn't work and was in need of care and Mrs. Butterfield did not wish to keep him without compensation. Previous to February 16, 1949, Mrs. Butterfield had, accordingly, given notice to one Whitcomb, the then overseer of the poor of Stockbridge, who came and saw her. On February 16 she saw Whitcomb again. Lawrence was then sick and Whitcomb directed Mrs. Butterfield to get a doctor for him and assurances were given her that the town would pay the doctor's bill and her for Lawrence's staying with her.

On March 1st, 1949, Ketchum was elected overseer of the poor of Stockbridge and on March 6, Mrs. Butterfield wrote him and sent a bill for Lawrence's care. There was further talk and letters between them about Lawrence. Ketchum investigated the situation and learned that Lawrence was a poor person, had no property and was in need of assistance. He learned that he had a guardian and who he was. On August 4, Lawrence went to see Ketchum and told him he would need some clothes. Ketchum saw that he was in rags and in need of assistance, but gave him none and "recom-

mended him to see his guardian." Ketchum did not pay Mrs. Butterfield for Lawrence's keep nor render any assistance and she declined to have him longer without pay and became insistent in her position.

In the forenoon of August 6, 1949, Lawrence went to the defendant, Dodson, who lived near by, seeking assistance and claiming need for a doctor. Dodson took him to one Perkins, a selectman. Dodson was town constable. After a consultation among these officials, Lawrence was taken to Ketchum. Lawrence returned to Butterfield's, picked up his personal effects, a suitcase and a box or two and Dodson came in his jeep and took him away. Dodson with Ketchum, riding in Dodson's jeep, then transported Lawrence to Randolph and to the house where Layton was then living. On August 6, Lawrence was not found "going at large" but was found where his guardian had in good faith placed him. Layton called an attorney on the telephone who came. He, Layton, Ketchum and Dodson discussed the "Pauper Laws." In this discussion it was stated and understood by all present that Lawrence was a poor person, had no property, that the funds held by Layton as guardian were exhausted and that he might become a town charge on Randolph. Ketchum, an overseer, had made no investigation as to the residence and settlement of Lawrence, had no knowledge as to where it was, but he and Dodson did not claim it was in Randolph. Dodson was assisting Ketchum and was under his direction. Ketchum and Dodson stated in substance that they were returning Lawrence to his guardian and were doing so under instructions of their attorney. Following this discussion and with knowledge of the foregoing facts, Ketchum and Dodson left Lawrence standing on the side-walk in front of Layton's house and went back to Stockbridge. Lawrence had no pauper settlement in Randolph and that town was not liable for his support when the defendants brought him there on August 6th.

■ The defendants in their brief seem to challenge as a matter of law, that part of finding number 30 that we are now considering, "that what he (Ketchum) did on August 6th was not done in his proper capacity as Overseer of the Poor." We will, therefore, assume it to be such, so if sustained by the facts previously found, no error can be predicated upon it. *Schwarz* v. *Avery*, 113 Vt 175, 180, 31 A2d 916. They say that Ketchum, as overseer of Stockbridge, had the duty of removing Lawrence to the town chargeable with his support and refer us to V. S. 47, § 7106. In the first place,

the unchallenged findings show that Randolph was not liable for Lawrence's support when the defendants brought him there on August 6th.

Furthermore, the foregoing section of the statutes does not help Ketchum as overseer in doing what he did. It is the duty of an overseer of the poor to provide for immediate relief of all persons residing or found in a town when they fall into distress and stand in need of relief, whenever he receives information, however conveyed, that relief is sought. V. S. 47, §§ 7106, 7108. *Nadeau* v. *Marchessault, Sr.,* 112 Vt 309, 311, 24 A2d 352, and cases cited. Lawrence was a poor person, he was in Stockbridge of which town Ketchum was overseer and he had received notice that Lawrence was in need of relief. He had investigated and found that Lawrence was a poor person, had no property, that he was in rags and in need of assistance. Section 7106 provides that an overseer of a town chargeable with the support of a poor person residing in another town may remove such person from such other town to the town chargeable with his support. That is the reverse of what Ketchum claims for it. Lawrence was not chargeable to the town of Randolph. If he had been living in a town other than Stockbridge and was in need of relief and Stockbridge was chargeable with his support, Ketchum, under that section, as overseer, if he had seen fit, would have had the right to remove him to Stockbridge. If he had been chargeable to Randolph, the overseer of that town would have had the right to remove him to Randolph, but the overseer of Stockbridge had no such right. In *Town of Weybridge* v. *Cushman,* 64 Vt 415, 24 A 1114, the defendant who was overseer of the poor of Middlebury, transported a pauper (a child) from Middlebury, where the child was, to Weybridge, the latter town not being chargeable with its support, and it was held that the defendant had no right to carry the child back to Weybridge, with intent to charge that town with its support.

The defendants rely upon the case of *Nadeau* v. *Marchessault, Sr., supra.* It does not help them. It was a suit against an overseer of the poor for negligence in failing to perform his duty in not furnishing aid to a poor person. The holding was, that the duty of an overseer to furnish relief is judicial in nature, involving an inquiry of fact and the exercise of judgment and discretion upon the case presented to him and if he acts within the limits of his authority, he is not liable for negligence at the suit of a private in-

dividual claiming to have been injured thereby. Here, Ketchum's only duty was to provide Lawrence with relief. He had no right as overseer of Stockbridge to remove him to Randolph. There could be no exercise of judgment and discretion in performing as overseer an act that he had no right to do. When a public officer goes outside the scope of his authority or duty, he is not entitled to protection because of his office, but is liable for his acts like any private individual. 67 CJS, Officers, § 126, p. 419; 43 Am Jur, Public Officers, § 277, p. 89.

The legislature has established a well defined system for the relief of the poor as well as for transient persons. It is to insure the immediate well being of such people. V. S. 47, §§ 7109-7110 provide for reimbursement to the town furnishing relief in the initial instance. To have the system work it is necessary that these people shall not be transported from town to town, with intent to shift liability, and not be cared for in the meantime. Hence, section 7137, under which this suit is brought, is a part of that system.

The finding that the removal was not done in his proper capacity as overseer of the poor is supported and justified by the other findings. The exception is not sustained.

The defendants excepted to finding number 32 on the ground that it is against the evidence and that there is no evidence to substantiate such a finding. The finding is as follows:

> "Although the declared purpose of defendants, Ketchum and Dodson was to return a ward to his guardian, their actual intent as gathered from the circumstances, was to use the declared purpose as a pretext to relieve the town of Stockbridge from impending liability in connection with Mr. Lawrence and cast that liability on the town of Randolph; that is, to charge the town of Randolph with Mr. Lawrence's support."

In addition to the circumstances that we have already noted from the findings, there was evidence that Ketchum, although he knew that Lawrence had a guardian, knew that the funds in the hands of the guardian had been exhausted and that the guardian had no funds with which to support Lawrence and that Ketchum had known this for several months prior to August 6. It would

be idle to suppose that if the guardian had been living in Stockbridge instead of in Randolph, that the defendants would have been so particular to return the ward to his guardian. They could hardly expect that the guardian would support the ward out of his own pocket. The declared purpose in taking him to Randolph is naive but not convincing. The finding is supported by the evidence.

The defendants excepted to finding number 34 that, "The Town of Randolph has had to expend the sum of $461.62 in relieving Mr. Lawrence, as a poor person, to the date of this action." The exception is on the ground that "The finding is not supported by the evidence and there is no evidence to substantiate such a finding." The evidence shows that after Lawrence was left on the sidewalk in front of Layton's house by the defendants, that Layton, as overseer of Randolph, made arrangements for him to stay temporarily with a Mrs. Byrd in Randolph and later made arrangements with Mrs. Butterfield for him to return there and that the amount expended by Randolph through its overseer for his care and other items was $461.62. No question is raised about amount or the need for its expenditure.

The defendants claim that, as Lawrence was back in Stockbridge when the aid was furnished, the town of Stockbridge should have furnished the support. That is what they sought to avoid by transporting Lawrence to Randolph. They say that Randolph was but a volunteer in furnishing the support. The overseer of Randolph was in duty bound to provide relief, Lawrence being a poor person in need of relief and being "found" in Randolph. V. S. 47, §§ 7098, 7106, 7108. He could provide it at such place as in his judgment was advisable. He need not, necessarily, keep the poor person in the town furnishing the relief. Lawrence was in Stockbridge, where he was placed for support and care by the overseer of Randolph, who was only performing his duty to provide for Lawrence after the defendants left him in Randolph; a situation of their own making. Lawrence, after such placing in Stockbridge, was not residing or found in Stockbridge within the meaning of the foregoing sections of the statutes. If this claim of the defendants was sound, a poor person, whom the overseer found it necessary to place in a nursing home for care, if that home happened to be in another town, would be "found" in the town where the home was situated. If this was so, overseers could probably without too much trouble always find places to have poor persons in need of relief

cared for outside of the town of the overseer. Such a situation or claim is contrary to the law.

This is not a suit to recover the amount expended by Randolph from Stockbridge so we are not concerned with notice between towns before recovery can be had as also claimed by the defendants in their brief. The finding is supported by the evidence.

In finding number 36 it is found that the plaintiff should recover of the defendants as penalty the sum of $300.00 and as damages that have accrued the sum of $461.62. The defendants excepted to this finding on various grounds, none of which are mentioned in their brief, except as it is discussed by combining it with their discussion of their exception to finding number 34, which we have already disposed of. They finish such discussion so far as it applies to the exception to finding number 36 by saying, "Therefore, there was no basis for the assessment of such damages against either of the defendants, Ketchum as principal, and Dodson as agent, and certainly no justification for an assessment against both." This is but a statement of contention not supported by argument or citation of authorities and merits no consideration. *Johnson* v. *Moore,* 109 Vt 282, 288, 196 A 246; *O'Connor* v. *Estate of Lape,* 110 Vt 217, 220, 3 A2d 554; *Flint* v. *Davis,* 110 Vt 401, 404, 8 A2d 671. However, this finding is a conclusion of law, rather than a fact found, so, if it is sustained by the facts previously found, no error can be predicated upon it. *Schwarz* v. *Avery, supra,* 113 Vt 175, 180, 31 A2d 916. It needs no further discussion to show that it is so sustained.

The defendants were allowed an exception to the judgment. We do not find this specifically mentioned in their brief. If not briefed it is waived. *Hackel* v. *Burroughs, supra,* 117 Vt 328, 91 A2d 703. They have, however, briefed a general question, that an overseer of the poor can return a ward to his guardian as a matter of right. They do not mention to what exception this briefing applies. The answer to it, whether it applies to the exception to the judgment, or otherwise, is that, as we have already seen, the findings show and rightly so that the real purpose of the defendants was not to return Lawrence to his guardian but to return him to the town of Randolph and relieve the town of Stockbridge from impending liability in connection with him and charge the town of Randolph with his support and that the declared purpose of returning him to his guardian was but a pretext. The judgment is sup-

ported by the findings, which is the question raised by an exception to it. *Barre City Hospital* v. *Town of St. Johnsbury,* 117 Vt 5, 6, 83 A2d 600.

*Judgment affirmed.*