## LUCY A. HUTCHINSON'S CASE.

### Penobscot.    Opinion November 24, 1923.

*Where an employer files an assent to the Workmen's Compensation Act as to a part*
*only of his employees upon the ground that the work in which they are engaged is a*
*separate business and files an insurance policy as to such employees, which*
*assent and policy is approved by the Industrial Accident Commission,*
*the employer cannot be held to be an assenting employer except as*
*to the employees engaged in the work covered by the assent,*
*nor the insurance carrier be held beyond the terms of*
*its contract of indemnity.*

The assent of the employer in the instant case and the insurance policy filed
covered only such men as were engaged on what is described in the evidence as
Job Plan 3083.

The finding of the Commissioner that the deceased was at the time of the accident
engaged in work connected with Job Plan 3083 is not sustained by any evidence
introduced before him at the hearing, and unless it can be properly sustained
by information obtained by him on a view of the plant, the appeal must be
sustained.

A decision, however, based in any part upon evidence obtained upon a view
cannot stand. The Act expressly provides that his decisions must be based
upon evidence presented before him. A view may be proper under certain
conditions, but it can only be had for the purpose of better understanding the
evidence when presented. His final findings must be grounded on evidence
presented under such circumstances as afford full opportunity for comment,
explanation and refutation by an opposing party.

In order that no injustice may be done, however, and evidence if any there be
tending to show that the deceased was engaged in work relating to Job Plan
3083, the case will be remanded for further hearing.

On appeal. A petition by Lucy A. Hutchinson, as dependent
widow, under the Workmen's Compensation Act, for compensation
for the death of her husband, Fred A. Hutchinson, who was killed
at the Veazie Power Plant while in the employ of the Bangor Railway
& Electric Company, September 8, 1919. The question involved
was whether the claimant's husband at the time of the accident
causing his death was engaged in employment which brought him
within the provisions of the act, that is, was the employer an "assent-

ing employer" as to the work being performed by husband of claimant at the time of the injury resulting in death. A hearing before the Chairman of the Industrial Accident Commission was had and compensation awarded, and an appeal entered by respondents. Appeal sustained. Case recommitted to Commissioner for further hearing.

The case is fully stated in the opinion.

*Albert G. Averill* and *W. H. Waterhouse*, for petitioner.

*Andrews, Nelson & Gardiner* and *Ryder & Simpson*, for respondents.

SITTING: CORNISH, C. J., HANSON, MORRILL, WILSON, DEASY, JJ.

WILSON, J. The Bangor Railway and Electric Co., is a public utility having its principal place of business in the city of Bangor and operates a street railroad and also supplies several cities and towns with electric current for light, heat and power.

In 1918, for the purpose of increasing the efficiency and output of one of its power plants located in the town of Veazie, it began on a plan of reconstruction of the power station, which plan, when fully completed, would include the erection or reconstruction of fifteen concrete flumes on the Veazie side of the Penobscot River, the installing therein of water wheels, the relocating of old and the installing of additional generators, and the replacing of the old switchboard controlling the output of the electric current with a modern and improved system of transformers and switches enclosed in a series of brick cells to which wires ran from the generators and which cells were also connected with the meters or meter panels in the power house.

The work was to be done, not under one plan and as a single unit, but under several plans and in separate units or jobs as they were termed in the evidence; not by outside contractors, but by the Company itself employing some of its own regular employees and such transient workers as might be necessary.

For instance, one, and apparently the first unit of construction undertaken, included the erection or reconstruction of the flume numbered 1 on the Company's general plan, the installing of a water wheel therein and the connecting up of the water wheel with the generators in the power house. Included in this "job," or as a separate unit of construction, the evidence does not disclose, was the erection, for the purpose of replacing the old switchboard, of a series

of brick cells, numbered from 1 to 34 inclusive on the Company's plans, and the installation therein of the necessary transformers and switches. Another job or unit as a part of the general plan of reconstruction of this power plant was the erection of additional brick cells with transformers and switches, twelve in number and numbered from 35 to 47 inclusive on the Company's Drawing numbered 3392 marked Respondent's Exhibit 4. This job or unit was designated on the Company's books and referred to in the evidence as "Job number 3082."

Another job or unit, designated on the Company's books as "Job number 3083," included the erecting or rebuilding of flumes numbered 2, 3 and 4 on the Company's plan and the installation of three new water wheels therein, and the relocating and connecting up of the generators in the power house with the new water wheels.

The work of reconstructing flumes from 5 to 9 and installing additional generators was later designated by "Job number 3088," and that of installing twelve more brick cells with transformers and switches it appears has also been treated by the Company as a unit in its general plan of construction and been given the job number of 30100. The remainder of the work may also have been further divided into units, but that is immaterial in the consideration of this case.

The work of reconstructing flume No. 1 and the installing of a water wheel therein and its connection with the generators in the power house had already been completed prior to the summer of 1919, as had also the erection of the brick cells, now numbered from 1 to 34 inclusive on the Company's plan, with the necessary transformers and switches and connections with the proper meter panels.

Up to June, 1919, respondent Company was not an assenting employer under the Workmen's Compensation Act as to any of the two hundred and fifty employees. On June 19, 1919, however, in anticipation of the somewhat unusual and hazardous character of the work to be done in reconstructing flumes 2, 3 and 4, the installation of water wheels therein and the relocating of the generators in the power house above, it filed its assent to become subject to the Compensation Act, which assent in writing specified the place of employment as Veazie, Maine, and the nature of the employment as, "Construction under Plan 3083, Bangor Railway & E. Co." "Average number of Employees—15." With this written assent,

as provided by the Act, it also filed an insurance policy which describes the location of the employment as the "Power Plant of the Company at Veazie, Me., Job Plan 3083"; and further describes the nature of the work, as "Concrete Work—Piers, Abutments for Bridges, Retaining Walls, Water Conduits, and other structures." The pay roll to include those engaged in making, setting up, and taking down frames, scaffolds, and false work, blasting, and drivers and drivers' helpers. The policy also contains the express provision that, "It is understood and agreed that this policy does not cover any work carried on by the above assured other than that described in Job Plan 3083 of the above corporation for work done at power plant in Veazie, Maine."

The assent and policy were approved by the Industrial Accident Commission and a certificate issued to the Company as an assenting employer under Paragraph III of Section 6 of the Act, thus in effect approving the division of its business and treating the work of constructing the flumes, installing the water wheel and relocating and connecting up the generators as a separate business.

Assuming this division of its business to be proper under Section 3 of the Act, as otherwise the Company cannot be held to be an assenting employer at all, and inasmuch as the insurance carrier cannot be held beyond the terms of its contract of indemnity, unless the deceased at the time of the accident was engaged on work covered by Job Plan 3083, or connected with it within the meaning of the contract of indemnity, the petition must be dismissed. *Fournier's Case*, 120 Maine, 191; *Michaud's Case*, 121 Maine, 537.

The petitioner's counsel apparently assents to this, and urges before this court, as the basis of the award, that the accident occurred while the deceased was examining wires connecting the generators with the transformer and switches in the brick cells and argues that this work was part of the work to be done under Job Plan 3083.

It is not quite clear, however, on what ground the award is placed, whether as the Commissioner states in one paragraph, that the work being done by the deceased "was a part of and incidental to the work contemplated under Job Plan 3083," or because, as he states in another, the deceased "was engaged in work directly connected with the development of the plant as set forth in Job Plan 3083"; the second conclusion being much broader than the first.

The first might follow from the finding in the decision that the work of constructing the brick cells "being done," the next step in the natural order was to install in flumes 2, 3 and 4 three S. Morgan Water Wheels and connect thereto the electric generators and connect those in turn with the switches on the already newly constructed "brick switch cells." The "brick switch cells" being covered by Job Plan 3082, and if this work was "done" and "already constructed" as indicated in the language of the decision above quoted, then wiring the generator up to the switch cells may be so connected with Job Plan 3083 as to be covered by the assent and the insurance policy in this case. If such be the finding of the Commissioner and he also found that the work on which the deceased was engaged was the inspection of the wires leading from the generators to the switch cells and there is any evidence in the case to support these findings, the award must stand.

The award, however, goes on to state that "It was in connection with the wiring in of the new brick switch cells made necessary by the addition of three new water wheels installed under Job Plan 3083 . . . . that Mr. Hutchinson was killed." This language is broad enough to include practically all the work of wiring connected with the new switch cells, as well that of connecting them with the distributing system as connecting them with the generators. If the final award is based in part on any finding that all the work of wiring in the switch cells is connected with the development of the plant and therefore with Job Plan 3083, then we think it clearly wrong.

Neither the assent of the Company nor the contract of indemnity can be construed to cover any electrical work except such as may be connected with the relocating of the generators and, as one witness testified, in connecting them with the rest of the system, which might include their connection with the transformers and switches in the new brick cells, but no more.

We must assume, therefore, that in stating in his decision that "From the evidence submitted at the several hearings and from information gained from personal observation on two visits to the power plant" it is found that the work being done by Mr. Hutchinson on the morning he was killed was a part of and incidental to the work contemplated under Job Plan 3083," and from his findings or assumptions that the work covered by Job Plan 3082 was "done"

and that the newly-constructed brick switch cells were "already completed," that the Commissioner must have found as a fact that Mr. Hutchinson at the time of the accident was engaged in inspecting the wires running from the generators to the brick cells.

Such a finding, however, is unsupported by the evidence presented at the hearings and reported to this court. The only testimony on this point is that by the other employees of the Company, and is all to the effect that the work on which the deceased was engaged was solely under Plan Number 3082 and had nothing to do with Plan 3083, that work under Job Plan 3082 had not been fully completed, and that it was while inspecting the wires connecting the switch cells with the meter panels, which also appear to be shown on Exhibit 4 in this case, that he received the current through his body resulting in his death. Any finding that he was connecting up or inspecting wires connecting the switch cells with any of the generators is entirely without evidence in the printed case to support it; and unless it can be properly sustained by information obtained upon the visits of the Commissioner to the plant, the appeal must be sustained.

It may be entirely proper for the Commissioner with the consent, or, unless waived, in the presence of the parties, to view the locus of the accident, not for the purpose of obtaining information or evidence on which to base his award, but for the purpose of better understanding the evidence presented to him at the hearing, as in case of views by a jury.

The act we think in terms prohibits his obtaining information to be used as evidence in this manner. Section 34 expressly provides that his decision is to be based on evidence presented at the hearing before him. As this court said in Gauthier's Case: "The Commissioner's final findings must be grounded on evidence presented under such circumstances as to afford full opportunity for comment, explanation and refutation."

As there was no evidence presented at the hearing which would warrant a finding that the deceased was engaged in any work connected with Job number 3083, we must assume the Commissioner must have obtained some information on his visits which he believed warranted him in finding that the work on which the deceased was engaged at the time of the accident was connected in some way with the wiring from the generators; but a decision based in part upon information or evidence thus obtained is not warranted by the

Act. Whether such evidence exists and could be presented at another hearing we do not know, but in order that no injustice may be done the petitioner, we deem it equitable to recommit the case to the Commissioner for further hearing in order that definite evidence, if such exists, may be properly presented on this point as to whether the wires being inspected by the deceased at the time of his death, were those connecting the generators with the switch cells as is now contended by the petitioner.

> *Appeal sustained.*
> *Case recommitted to Commissioner for further hearing.*