MARGARET L. HAWKINS,
ALLEGED DEPENDENT DAUGHTER OF
NELSON HAWKINS

*vs.*

PORTLAND GAS LIGHT CO., ET AL.

Cumberland.   Opinion, August 16, 1945.

*Edward B. Perry*, for the plaintiff.

*Forrest E. Richardson,*

*Robinson, Richardson & Leddy,* of Counsel, for the defendants.

SITTING: STURGIS, THAXTER, MANSER, MURCHIE, CHAPMAN, JJ.

MANSER, J. Nelson Hawkins was killed while in the employ of the Portland Gas Light Co., by a shot from a revolver in the hands of a crazed United States soldier. His daughter, Margaret L. Hawkins, alleged dependent, sought an award of compensation upon the ground that the injury causing the death of her father arose out of and in the course of his employment as a foreman working for the defendant Company.

Hearing was had before a Commissioner of the Industrial Accident Commission. So far as material to the present issue, his findings of fact were as follows:

> "Hawkins was on the shift whose hours of employment were from three to eleven o'clock in the evening. At some time between seven and seven-thirty, Hawkins, with two other employees, was in the front office of the plant. This plant was enclosed by a board fence some six feet high, with barbed wire strung on its top. The office was close to the fence on the Commercial Street side, and not far from the

gate. The gate, as high as the fence, also had barbed wire on its top. The only means of entrance to the plant or its property was either through the gate or over the fence. The gate was closed and locked.

As the three men were together there in the office they heard a noise which might, they thought, have been either the back-fire from an automobile or a rifle shot. All three proceeded leisurely toward the gate, apparently with no one having any anxiety that the Company's property was in any way endangered. Hawkins unlocked the gate, opened it, and the three men stepped through into the darkness.

At the time, the waterfront was being guarded by colored troops of the United States Army. Such troops were guarding the railroad right of way which adjoined the gas company's property on the Commercial Street side. As the eyes of the three men became accustomed to the darkness, they saw a colored soldier standing with his rifle pointed toward them. The soldier muttered something that was unintelligible to the men, then said distinctly, "I mean you," and fired a shot from his rifle. The shot killed Hawkins and wounded one of the other men. The soldier, as it afterward developed, had already shot one soldier, and, after killing Hawkins, was to shoot another soldier."

The Commissioner then stated the resulting issue thus:

"Did Nelson Hawkins' death occur under such circumstances as to make it compensable under the Workmen's Compensation Act? Was it injury "arising out of and in the course of his employment" with-

in the meaning of that phrase as used in Section 8, Chapter 55, 1930 Revised Statutes?"

The Commissioner ruled as follows:

"This assault by the crazed soldier did not occur because of Mr. Hawkins' employment. Mr. Hawkins was not exposed to the danger of such an assault any more than a member of the public generally who might have been in 'the neighborhood at the time the soldier was shooting so promiscuously. The evidence does not warrant a finding either that Mr. Hawkins was in the act of protecting his employer's property or that such property was in fact endangered, or even that Mr. Hawkins thought it was. He was not fired upon because he was an employee of the gas light company."

The petition for award of compensation was dismissed, and the case is before the Court upon an appeal from the subsequent decree of a Justice of the Superior Court denying compensation.

The familiar rule of the statute that the decision of the Commissioner in the absence of fraud, upon all questions of fact, shall be final, is not challenged by the appellant, but it is claimed that the statute has been misconstrued and that the Commissioner was in error in making application of the legal principles to the facts as found, and further that he did not apply the proper rule as to the burden of proof.

In his discussion of the law the Commissioner cited *McNicol's Case*, 215 Mass., 497, 102 N. E., 697, L. R. A., 1916 A., which since 1913 has been an expository guide to many courts, including our own, in the interpretation of

the particular requirement of the statute here involved. Other authorities referred to in our own jurisdiction were *Fournier's Case,* 120 Me., 236., 113 A., 270, 23 A. L. R., 1156; *Gray's Case,* 123 Me., 86, 121 A., 556; and *Weymouth's Case,* 136 Me., 42, 1 A., 2d., 343. *Harbroe's Case,* 223 Mass., 139, 111 N. E., 709, was cited for the reasoning of the court upon a similar factual situation. The decision also showed study and consideration of the cases annotated in 15 A. L. R., 595, 21 A. L. R., 760, 29 A. L. R., 442, 40 A. L. R., 1127, 72 A. L. R., 114 and 112 A. L. R., 1262.

Reams have been written undertaking to define and apply the simple, expressive requirement of the statute that, in order to be entitled to compensation, an employee must have received "a personal injury by accident arising out of and in the course of his employment." The Commissioner decided that this accident did not arise out of the employment. The inescapable connotation of the phrase is that the injury must have been due to a risk to which the employe was exposed because employed by the defendant. *Mailman's Case,* 118 Me., 172, 106, A., 606. There must be some causal relation between the conditions under which the employee worked, and the injury which he received. *Westman's Case,* 118 Me., 133, 106 A., 532. The causative danger must be incidental to the character of the employment. *Fogg's Case,* 125 Me., 168, 132 A., 129. To arise out of the employment, an injury must have been due to a risk of the employment. *Wheeler's Case,* 131 Me., 91, 159 A., 331.

The rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment, and not by some other agency, or there can be no recovery. *Madden's Case,* 222 Mass., 487, 495, 111 N. E., 379, 383, L. R. A., 1916 D. 1000.

So far as appears in the evidence, Hawkins had no duty to perform when he went with the other men outside the

place of his employment. It was not incumbent upon him at the time to unlock the gate separating the premises of his employer from the street and the railroad tracks. There is no intimation that there was any menace to his employer's establishment or to any employee thereof. Even if he realized that it was the sound of shooting which he heard, it does not appear that he, entirely unarmed, could perform any useful service by leaving the premises and walking into the peril. He went out, utterly defenseless, and unwittingly made himself a target to the rifle in the hands of a soldier, who had suddenly lost his reason. There is nothing which would warrant the ruling that he expected to find any other employee, subordinate to himself, for whom he could attempt to provide protection. The causative danger must be peculiar to the work and not common to the neighborhood. *Washburn's Case*, 123 Me., 402, 123 A., 180.

Upon the issue here involved, practically all of the foregoing cases and a number of others were considered and cited more copiously in *Weymouth* v. *Burnham & Morrill Co.*, 136 Me., 42, 1 A., 2d., 343, and except for the purpose of application to the circumstances of the present case, are but a repetition of the course of the decisions of our Court relative to such issue. The risk and resulting injury did not arise out of the employment. The Commissioner was justified in so ruling upon the facts as found by him.

But the appellant urges that the Commissioner should have considered other possibilities upon the hypothesis that the burden rests entirely upon the defense to show that Hawkins was not acting within his employment at the time. Upon such assumption, it is claimed that, while the evidence shows that Hawkins went outside the premises of the defendant to investigate, it does not show the purpose of the investigation or even that that was the reason for leaving the premises. It is urged that he might have decided to ex-

ercise his responsibility under the Sabotage Prevention Act, P. L. of Maine 1941, c. 237, §8; he might have been on his way to the Libbytown holder; he might have been going to the freight shed again. These suppositions are noted, not because it was the duty of the Commissioner to consider them, but to show that they are without merit. The Sabotage Act referred to provides only that a man acting in a supervisory capacity may stop any person found on any premises to which entry without permission is forbidden, and may detain him for the purpose of demanding his name, address and business in such place. By no stretch of the imagination could Hawkins be found to have been undertaking to detain an intruder on the premises of his employer to ascertain his business. As to the Libbytown holder, which is decribed in the evidence as a gas receiver or tank some distance away from the premises, the only witness who testified concerning Hawkins' duty in that respect, answered explicitly in the negative when asked whether Hawkins was on his way there when the shooting incident occurred; and again, as to the freight shed, that he had just returned therefrom with a bill of lading. The same witness further testified that the action of the soldier when the three men appeared was absolutely deliberate and unprovoked, and so far as he knew, there had never been any trouble between any of the negro soldiers and any of the employees. Thus the surmises and conjectures of counsel find no support in the evidence.

The ruling, however, is firmly established in this State since the earliest construction of the statute relating to workmen's compensation, and which Act became operative in this State January 1, 1916, that the burden rests upon the claimant to prove the facts necessary to establish the right to compensation. *Westman's Case,* supra; *Mailman's Case,* supra; *McNiff* v. *Old Orchard Beach,* 138 Me., 335,

25 A., 2d. 493. Attention is also called to the clarification of the rule relating to findings of fact by the Commissioner against the claimant as set forth in *Robitaille's Case,* 140 Me,. 121, 34 A., 2d. 473.

*Appeal dismissed.*
*Decree affirmed.*