Aubrey O. WHITE

v.

**MONMOUTH CANNING COMPANY and/or
Lumbermens Mutual Casualty Co.**

Supreme Judicial Court of Maine.

April 21, 1967.

Fred E. Hanscom, Rumford, for plaintiff.

Clement F. Richardson, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

DUFRESNE, Justice.

This is an appeal by the defendant employer, Monmouth Canning Company, from a pro forma decree of the Superior Court implementing the Industrial Accident Commission's award of compensation to the plaintiff employee at the rate of $30.86 per week from July 31, 1963 to continue until the decree is nullified by the Commission or by agreement. The issue is whether or not the Industrial Accident Commission erred as a matter of law in finding (1) that the plaintiff employee suffered a personal injury by accident arising

out of and in the course of his employment, (2) that he was totally incapacitated as a result of said injury and (3) that he was entitled to compensation from July 31, 1963 at the rate of $30.86 per week until the decree be nullified by the Commission or by agreement.

In his petition for an award of such compensation as he may be entitled to, the plaintiff alleged that on the 28th day of July, 1963 while working as a "bean picker in field" in the employ of Monmouth Canning Co. at Canton, he received a personal injury by accident arising out of and in the course of his employment, of which the employer had due knowledge or notice, and more specifically that said accident happened as follows:

"While bagging beans riding on mechanical bean picker owned by Monmouth Canning Co. The tractor hauling the bean picker stopped and turned suddenly. I was suddenly swung and twisted although I did not fall from the picker, but my back was twisted and vertebra dislocated." He further stated therein that the accident resulted in an injury as follows:

"Strained back and dislocated vertebra. Am still wearing a brace."

The Commissioner of the Industrial Accident Commission whose decision the pro forma decree of the Superior Court carried out made the following contested findings:

(1) "The Commissioner hearing this case finds as a fact from the foregoing testimony on which there is no material deviation from the employee's story as told at the time of the hearing and as told to the several doctors who examined him, that he did suffer a personal injury by accident arising out of and in the course of his employment, and that this injury was in the area described by the employee."

(2) "The Commissioner hearing this case is persuaded by the employee's story and the medical testimony given by his doctor who had the opportunity to view the condition of the patient, and finds that the employee was totally incapacitated for work from the time he stopped work until the final hearing."

A perusal of the whole evidence justifies the Commissioner's evaluation to the effect that there was no material deviation in the plaintiff's history of the accident and his finding that the plaintiff suffered a personal injury by accident arising out of and in the course of his employment stands practically undisputed in the evidence. Revised Statutes, 1954, c. 31, § 37, as amended, now 39 M.R.S.A. § 99, provides in part that a decision of the Commissioner, in the absence of fraud, shall be final upon all questions of fact. The question on appeal is whether the decision of the Commission rests on some legally competent and probative evidence and is not merely the result of speculation, conjecture or guesswork. Bradbury v. General Foods Corporation, (1966) Me., 218 A.2d 673; Crowley's Case, (1931) 130 Me. 1, 153 A. 184; Mailman's Case, (1919) 118 Me. 172, 106 A. 606.

The facts may be succinctly stated as follows. On July 28, 1963, at about 10:30 a. m. the plaintiff while riding on a bean picker attached to a tractor lost his balance and fell against the machine when the tractor made a sharp turn and sudden stop, twisting his back in the process. Although he experienced severe pain, he continued working that day and the following Monday. On Tuesday, he quit work at about 2:00 p. m. because his side pained him so he could not stand it any longer. He was hospitalized for 14 days by Doctor Charles M. Smith, his attending physician who diagnosed his ailment as acute muscular strain right sacroiliac region, with degenerative arthritis of lumbosacral spine and aggravation of an inguinal nerve neuritis. Because of the inguinal nerve neuritis, Dr. Smith injected him in the right groin to relieve the pain in that region. His back however remained about the same. After two weeks additional stay at home with bed rest and heat treatment, plaintiff ex-

perienced more intense pain in his back and especially in the lower fibres of the lumbar muscle just above the sacroiliac joint and in the right gluteus medius and also again in the region of the plaintiff's right herniorrhaphy scar; because of this recurrence of pain, Dr. Smith had his patient readmitted to the hospital for pelvic traction treatments on August 28, 1963, and this second hospitalization ended on September 11, 1963, when the plaintiff was informed that he should not go back to work, that he was not to do any forward flexing or lifting. An operation to expose the ilioinguinal nerve and perform a neurectomy was carried out on February 26, 1964, but a neuroma was not identified. Doctor John P. Greene, an orthopedic surgeon, examined the plaintiff on August 13, 1963, July 7, 1964 and April 5, 1965. He confirmed that the plaintiff had suffered a severe strain of his lower lumbar muscles on his right side and of his right buttock muscles, specifically the gluteus maximus and that he had over 50% limitation of motion in all directions. He testified on cross-examination that plaintiff's neurological complaints are probably caused because of his strain to his back, as they are quite common with a back strain either acute or chronic, even though they are not necessarily objective. The doctor admitted that plaintiff's case was unusual. The defendant's medical evidence tended to prove that the plaintiff's disability on account of his accident should have terminated according to one doctor within some twelve weeks and according to the other within a week or two. Plaintiff's complaints have consistently supported a severe injury. He stated that he cannot lie flat on his back or on his right side because of the severity of his back pain, and that he sleeps only an average of 2 to 3 hours each night. He complained of a generalized numbness of his right leg and foot.

The Commissioner was satisfied that the plaintiff did suffer a personal injury by accident arising out of and in the course of his employment, and this finding is over-whelmingly supported by the evidence. Counsel for the defendant does not seriously dispute the correctness of such finding, but rather directs his legal attack upon the Commissioner's lack of specificity as to the nature of the injury resulting from the accident. He argues that the evidence shows that the plaintiff was suffering from a back strain as well as from an inguinal nerve neuritis, and that the Commissioner should have specified whether the plaintiff was incapacitated from either or both and whether either or both were the result of the accident. He does assert that if the Commissioner had ascribed plaintiff's condition solely to the inguinal nerve neuritis and had found the same compensable, then his finding of causal relation between the accident and the injury would rest on very little medical support to establish it.

▪ The Commissioner's finding is not ambiguous. He concluded that "this injury was in the area decribed by the employee." In his petition, the plaintiff described his injury in the following terms: "my back was twisted and vertebra dislocated"; and he stated that the accident resulted in an injury as follows: "strained back and dislocated vertebra. Am still wearing a brace." Plaintiff did not claim, nor even suggest, that his inguinal condition was in any way causally related to the accident. Under Revised Statutes, 1954, c. 31, § 32, as amended, now 39 M.R.S.A. § 94, the petition for award of compensation must contain certain essential allegations such as the names and residences of the parties, the facts relating to the employment at the time of the accident, the time, place and cause of the accident, the knowledge of the employer or notice of the occurrence thereof, *the character and extent of the injury* and the claims of the petitioner with reference thereto; *together with such other facts as may be necessary and proper* for the determination of the rights of the petitioner relative to said claims. Our Court has taken cognizance of the statutory requirement. See, Morin's Case, 122 Me.

**799**

338, 120 A. 44; Clark's Case, 120 Me. 133, 113 A. 51; Maxwell's Case, 119 Me. 504, 111 A. 849. The Commissioner's finding must be read in the light of the petition and must be interpreted to mean that the personal injury suffered by the employee was in the area of the back as described by him in his petition and in the evidence. Although it would be more desirable that the findings of the Commissioner be couched in more precise and direct language, nevertheless this shortcoming in the instant case vanishes readily upon the reader's retrospection of the plaintiff's petition.

The defendant next claims that it was error for the Commissioner to find that the plaintiff was totally incapacitated as a result of the injury received in the accident. The employer bases this claim on the fact that, in addition to its own medical evidence, Dr. Smith, plaintiff's attending physician, did tell the plaintiff in November, 1963, to try light work, that he might be able to do light work. The plaintiff however testified that he would have tried doing light work, if the defendant had had any work that he could do, but that upon ascertaining that his employer had no available work that he could do, he did not try elsewhere for light work, because "I didn't feel able to." The Commissioner stated in his findings that he was persuaded by the plaintiff's story, and was especially impressed by the fact that the plaintiff on being recalled to the stand on April 6, 1965, some 20 months after the accident, "testified that he didn't sleep over 1½ hours a night and was still taking medication, * * he was unable to bend or lift anything * * riding in a car bothered his back and legs * * * the pain goes through his hip; his leg gets numb and his toes go to sleep on the right side." The Commissioner concluded from the plaintiff's story and the medical testimony of Dr. Smith who had the opportunity to view the plaintiff's condition that the plaintiff was totally incapacitated for work from the time he stopped work until the final hearing on April 6, 1965. This finding was further fully supported by plaintiff's other medical witness, Dr. Greene. It is true that the defendant's medical evidence disputed the disabling effect of the plaintiff's injury to the extent of casting insinuations of malingering on the part of the plaintiff.

The nature and extent of a claimant's disability is a question of fact upon which the finding of the Commissioner is final if there is any credible competent evidence to support it. "It was his privilege and province to pass upon the credibility of the testimony and consider it in connection with the circumstances and probabilities tending to prove or disapprove the testimony." Foley v. Dana Warp Mills, etc., 122 Me. 563, 119 A. 805.

Whether there is disability due to injury is a question of fact. Kilpinen's Case, 133 Me. 183, 175 A. 314; Lothrop v. Brooklawn Co., 135 Me. 391, 197 A. 553.

Since our statute provides that the decision of the Commissioner, in the absence of fraud, upon all questions of fact shall be final, we are of the opinion that this Court after full consideration of all the evidence is not authorized to intervene in the instant case so far as this aspect of the case is concerned and therefore the finding of total disability must stand.

The defendant's third and last ground for appeal attacks the Commissioner's finding that the compensation to which the plaintiff is entitled while his incapacity for work resulting from the injury is total shall be at the rate of $30.86 per week.

The Workmen's Compensation Act at the time of the plaintiff's accident provided in such circumstance for the payment by the employer to the injured employee of a weekly compensation "equal to ⅔ his average weekly wages, earnings or salary, but not more than $39 nor less than $15 a week." R.S.1954, c. 31, § 11, as amended by P.L. 1959, c. 338. (See 39 M.R.S.A. § 54). The average weekly wages, earnings or salary, by statutory definition, must be determined

from one of 3 different methods of computation, with the particular formula to be used depending upon which one fits the factual specifics of the employment. R.S.1954, c. 31, section 2, subsection IX, A., B., and C. (See 39 M.R.S.A. section 2, subsection 2, A., B., and C.)

■ The record before us contains no evidentiary data from which the weekly compensation rate to be paid by the employer to the employee during the latter's total incapacity resulting from the accident can be determined. The weekly amount for which the plaintiff may qualify under the statute, as any other ultimate issue, must be supported by evidence. See Thibeault's Case, 119 Me. 336, 111 A. 491.

But counsel for the plaintiff seeks justification for the Commissioner's finding of $30.86 as the weekly compensation the plaintiff is entitled to, because of information available to the Industrial Accident Commission by reason of an alleged first report of the plaintiff's injury dated July 30, 1963, and filed by the defendant employer with the Commission together with an alleged letter from the defendant employer to the Commission under date of August 2, 1965, specifying the days worked by the plaintiff for the month of July and the wages earned during that period. The latter details obviously would fall short of the statutory requirements. The reference employer's report may have specified the plaintiff's average weekly wages or earnings as required by R.S.1954, c. 31, § 44, now 39 M.R.S.A. § 106, but it was not made part of the evidence in the case.

■ The burden of proof in an industrial accident case is on the compensation claimant to prove his case in all its parts, including the basic evidence necessary to establish the amount which his right to compensation calls for. He must adduce competent and probative evidence of every fact essential to the ultimate finding. Mailman's Case, 118 Me. 172, 106 A. 606; Butts' Case, 125 Me. 245, 132 A. 698; Hawkins v. Portland Gas Light Co., 141 Me. 288, 43 A.2d

718; Houle v. Tondreau Bros. Co., 148 Me. 189, 91 A.2d 481.

■ The Commissioner's findings as to the amount of compensation must be grounded, as in the case of any other finding, upon evidence presented under such circumstances as to afford full opportunity for comment, explanation and refutation. Hutchinson's Case, 123 Me. 250, 122 A. 626; Marchavich's Case, 123 Me. 495, 500, 124 A. 209; Gauthier's Case, 120 Me. 73, 113 A. 28.

The statute, R.S.1954, c. 31, § 37, now 39 M.R.S.A. § 99, specifically requires the Commissioner's decision on the merits of a controverted case to be made from the evidence or from an agreed statement of facts filed by the parties with the Commission. We said in Jacque's Case, 121 Me. 353, 117 A. 306, in connection with an employer's report of an accident to an employee in the course of employment, that "In so far, and in so far only, as it contained statements which were declarations against the interest of the employer the report was admissible. * * * The fact that the report was made and filed as an official document required by law cannot detract from its admissibility."

The present issue, which was left open in *Jacque's*, is whether the Commissioner may take judicial notice of the employer's report filed under the Workmen's Compensation Act with the Industrial Accident Commission, which presumably was done in the instant case, where the report was not formally introduced in the evidence nor furnished to the Commissioner by the parties as an agreed statement of facts.

Plaintiff's petition for an award of compensation did not contain any allegation of his average weekly wages, earnings or salary, two thirds of which would be the weekly compensation he was entitled to while his incapacity for work resulting from the injury was total, nor did he assert therein basic facts necessary under any one of the 3 statutory methods of computation upon which he relied to have his compensation

determined. The only issues raised by the petition were that the plaintiff had received a personal injury by accident arising out of and in the course of his employment with the defendant, that the defendant employer had due knowledge or notice thereof, and that said accident was disabling.

■ Even though the defendant's general denial was insufficient as an answer for want of specificity of its contentions and was a violation of the declared intent of the statute that answers shall respond specifically to the plaintiff's claim, Newell v. North Anson Reel Co., et al, 161 Me. 461, 214 A.2d 97 (1965), nevertheless where the plaintiff did not raise the point and the trial was had as though the answer was statutorily sufficient and the case determined on its merits, the error will be regarded as waived. Ross' Case, 124 Me. 107, 126 A. 484.

■ In cases under the Workmen's Compensation Act, the employer is deemed to have waived any defense constituting an avoidance of liability under the Act or in the nature of an affirmative defense at law, if said defense is not pleaded. Comer's Case, 130 Me. 373, 156 A. 516 (statute of limitations); Ripley's Case, 126 Me. 173, 137 A. 54 (res adjudicata); Morin's Case, 122 Me. 338, 120 A. 44 (statute of limitations); McCollor's Case, 122 Me. 136, 119 A. 194 (statute of limitations); Mitchell's Case, 121 Me. 455, 118 A. 287, 33 A.L.R. 1447 (independent contractor). In the absence of an answer or where the answer filed does not dispute the material facts alleged in or disclosed by the petition, such facts as appear on the face of the petition are treated as admitted. DeMeritt's Case, 128 Me. 299, 147 A. 210; Clark's Case, 125 Me. 408, 134 A. 450; Brodin's Case, 124 Me. 162, 126 A. 829.

■ The plaintiff had the burden to prove as part of his case his average weekly wages, earnings or salary within the statutory concept. His failure to allege in the petition what his average weekly wages were at the time of the accident within the meaning of the Workmen's Compensation Act, immunized the defendant against any possible waiver of any defense or dispute thereon by reason of its own failure to state its contention relating thereto. DeMeritt's Case, supra.

In Carroll's Case, 225 Mass. 203, 114 N.E. 285, 287, (1916), however, it was held that any report on file with the Industrial Accident Board may be acted upon by the board without formally being put in evidence. See also, New Jersey Fidelity & Plate Glass Ins. Co. v. Patterson, (1929) 86 Colo. 580, 284 P. 334; F. Eggers Veneer Seating Co. v. Industrial Commission of Wisconsin, (1919) 168 Wis. 377, 170 N.W. 280. We have given due consideration to the procedure espoused by these authorities, but respectfully decline to adopt the same.

In a proceeding under the Longshoremen's and Harbor Workers' Compensation Act, where the deputy commissioner is required to make, or cause to be made, such investigations as he deems to be necessary, it was held that the Act, by requiring "a record of the hearings and other proceedings before the deputy commissioners" implies "that all proceedings by the deputy commissioner upon a particular claim shall be appropriately set forth, and that whatever facts he may ascertain and their sources shall be shown in the record and be open to challenge and opposing evidence. Facts conceivably known to the deputy commissioner, but not put in evidence so as to permit scrutiny and contest, will not support a compensation order." Crowell v. Benson, (1932) 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598. See also annotation in 18 A.L.R.2d 552, §§ 3, 4 and 8.

In Gauthier's Case, 120 Me. 73 at page 78, 113 A. 28, we said that certain medical testimony taken ex parte could not be made the foundation of a decree until it is produced in evidence so that either party may have an opportunity to explain or contradict it.

Revised Statutes, 1954, c. 31, § 37 now 39 M.R.S.A. § 99, provide that "If from the petition and answer there appear to be facts

in dispute, the commissioner shall then hear such witnesses as may be presented, or by agreement the claims of both parties as to such facts may be presented by affidavits. If the facts are not in dispute, the parties may file with the commission an agreed statement of facts for a ruling upon the law applicable thereto. From the evidence or statements thus furnished the commissioner shall in a summary manner decide the merits of the controversy."

■ The plaintiff did not tender the issue of his average wages at the time of the accident, because he failed to allege what they were in his petition for award of compensation. That issue was not foreclosed to the defendant employer as it was not an affirmative defense for the defendant to raise in its answer. Under the posture of the pleadings, the plaintiff had the duty to prove the same either through the testimony of witnesses, or by agreement upon affidavits presenting the claims of both parties, or upon an agreed statement of facts. The statute says that the Commissioner shall decide the merits of the controversy from the evidence or statements furnished by affidavits or agreed statement. The statute gives no authority to the Commissioner to decide the controversy upon the employer's report filed with the Commission when said report has not been formally made part of the evidence before the Commissioner hearing the case. The provisions of this statute are mandatory on the parties and on the Commissioner. Girouard's Case, 145 Me.

62, 71 A.2d 682. The employer's report as filed with the Commission was available to the employee as evidence and it was his duty to see that it was made a part thereof subject to any explanation or contradiction by the employer.

■ When a claimant has failed or overlooked submitting evidence to establish the amount of compensation to which he is entitled, it then becomes the duty of the Commissioner hearing the case to call attention to such failure, to see to it that whatever evidence is available to establish such fact is presented, and then make the necessary findings of fact. Watkins v. Cavanagh, 61 Idaho 720, 107 P.2d 155.

The case is remanded to the Commission for the purpose of determining the amount of weekly compensation to which the plaintiff is entitled under its finding of plaintiff's total incapacity for work as a result of personal injury by accident arising out of and in the course of his employment from July 31, 1963 until nullification by the Commission or by agreement, said determination to be made after further hearing according to law.

Appeal sustained.

Case remanded for further hearing to determine the rate of weekly compensation to which the plaintiff is entitled. Ordered that an allowance of $300 to cover fees and expenses of counsel plus cost of the record be paid by the employer to the employee.