Charles T. **WILLIAMS**

v.

**HARRIS BAKING COMPANY and Aetna Casualty & Surety Company.**

Supreme Judicial Court of Maine.

June 28, 1971.

Julius B. Levine, Waterville, for appellant.

Locke, Campbell & Chapman by Joseph B. Campbell, Harry N. Starbranch, Augusta, for appellees.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

This is an appeal from a pro forma decree of the Superior Court affirming a decree of the Industrial Accident Commission. The Employee, Orrin D. Williams, died September 22, 1970, and Charles T. Williams, his Executor, was properly substituted as a party. 39 M.R.S.A. § 105.

As the result of an industrial accident compensation of $67.64 weekly had been ordered effective December 13, 1969. On March 18, 1970, a petition was filed by the Appellees requesting that the compensation be "diminished or ended" because of reduced incapacity. A hearing was held before a single Commissioner on April 27, 1970, at which the Employee was present, but not represented by counsel. Dr. Paul Stucki, who had examined Mr. Williams, testified:

"Q Do you place any restriction, Doctor, at all to his work capacity?

"A I would say he can do as much as he finds he is capable of doing.

"Q What is he capable of doing?

"A He is capable of doing what he says he can do, which at the moment isn't much and which I personally feel probably ought to be more than what he says he can do."

Mr. Williams was sworn by the Commissioner and testified, "I'm not able to work." His reason was that he had "blackouts, severe headaches" and, because of "foggy spells * * * I don't even dare to drive."

Dr. Stucki then asked, and was allowed, to add to his previous testimony, "Should

the patient's complaints of headache persist, a neurologic or neurosurgical consultation might be indicated and helpful. * * *" The Commissioner then stated, "[I]t might be wise if *you* had this man examined by *a* neurologist with that idea in mind and I would feel a lot better about it myself * * *." (Emphasis added.) The Commissioner was obviously speaking to the Attorney representing the Appellees.

The record of this hearing is concluded as follows:

"COMMISSIONER: This is the problem. Apparently his only problem is these constant headaches and blackouts and I would like to just explore that and I would feel a lot better before I write any decree on it.

"They are going to arrange to have an appointment for you.

"MR. WILLIAMS: Who is that, sir?

"COMMISSIONER: Mr. Campbell here.

"MR. WILLIAMS: You will write to the hotel?

"MR. CAMPBELL: Yes, we will see that you have an appointment made with the doctor.

"MR. WILLIAMS: Thank you very much.

"*Hearing ended*:

Doctor Bruce Trembly's report of May 27, 1970, was submitted after the hearing, *to be considered as evidence*."[1] (Emphasis added.)

Dr. Trembly's report is not in the record and is not before us.

A hearing was later scheduled for June 22, 1970, which Mr. Williams did not attend, nor does the record indicate such a hearing was ever actually held. Subsequent to that date the Employee attempted to explain his absence from the June 22nd hearing and, for the first time, employed counsel who, in turn, made unsuccessful efforts to secure a further hearing.

On July 22, 1970, the decree appealed from was issued reducing compensation to $33.82 per week effective April 27, 1970, which contains this statement:

"Orrin Williams was examined on May 26, 1970, by Dr. Bruce Trembley [sic], a neurosurgeon of Waterville, Maine. The report was submitted to the Commission for consideration. He has no obvious motor abnormality of the extremities. He has good strength, dexterity and co-ordination. The Romberg test is negative. It was Dr. Trembley's [sic] impression that the headaches, dizziness, staggering and poor memory fall into the category of a post concussion syndrome."

The decree clearly indicates the Commissioner's use of neurological facts, in the form of Dr. Trembly's report, as relevant evidence to support his decree reducing the rate of compensation by 50%. The record before us does not show any consent to this procedure by Mr. Williams, nor does it indicate that he, or his Attorney, had any knowledge of the content of this medical report.

39 M.R.S.A. § 99 authorizes an Industrial Accident Commissioner to decide the merits of a controversy "From the evidence," and the well established rule in Maine has been thus stated: "The Commissioner's findings * * * must be grounded * * * upon evidence presented under such circumstances as to afford full opportunity for comment, explanation and refutation." White v. Monmouth Canning Co., (Me. 1967) 228 A.2d 795 at 800. See also Gauthier's Case, (1921) 120 Me. 73, 113 A. 28.

It is clear that Dr. Trembly's "report" does not fall within the scope of 39 M.R. S.A. § 100 which, in part, provides:

"Upon the request of the petitioner, the commission shall *order* the employee to

---

1. This last sentence must have been added by the Commission Reporter at some date subsequent to this hearing.

submit to examination by an *impartial phyician or surgeon designated by the commission* from the geographical area where the employee resides. If the employee refuses to submit to such examination, or if after examination such physician or surgeon *certifies* to the commission that in his opinion the employee is able to resume work, the payment of compensation may be decreased or suspended pending final decision on the petition for review. * * *" (Emphasis added.)

The Appellees did not "request" this examination, no "order" was issued, the specific doctor was not "designated," nor is there any certificate before us containing a medical opinion that Mr. Williams "is able to resume work."

We conclude that the decree appealed from utilizing improperly received evidence has no legal effect and cannot serve to authorize a diminution in the rate of compensation. The mere filing of a petition for review does not operate to decrease payment of compensation until there has been a final decision on the petition, unless within the statutory exceptions, which are not pertinent to the issues here. 39 M.R.S.A. § 100.[2] Waltz v. Boston & Rockland Transportation Co., (1965) 161 Me. 359, 212 A.2d 431. Therefore, the Appellant is entitled to compensation at the rate of $67.64 weekly from April 27, 1970, to the date of death, September 22, 1970, which was agreed to be $719.67.

The entry is

Appeal sustained. Remanded to the Industrial Accident Commission for entry of an appropriate order consistent with this

opinion. Ordered that an allowance of $350.00 to cover fees and expenses of counsel plus cost of the record be paid by the employer to the Executor.

---

2. "Pending a hearing and final decision upon such petition for review, and except in such cases as the employer and employee may reach a new agreement under section 94, the payment of compensation shall not be decreased or suspended unless and until a certificate of the employer or his insurance carrier is filed with the commission stating that the employee has left the State for reasons other than returning to his permanent residence at the time of the injury or that his present whereabouts are unknown, or that he has resumed work."